**Charles ANDERSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1–982A269.

Court of Appeals of Indiana, First District.

Aug. 9, 1983.

---

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

Charles Anderson (Anderson) appeals the verdicts convicting him of the robbery and battery of Patrick J. Connelly (Connelly). Anderson raises five issues on appeal.

We affirm.

The facts most favorable to the State reveal that Connelly had been drinking earlier in the day when he met Anderson and James B. Ford (Ford) at the City Lights nightclub in Louisville at approximately 9:00 p.m. Connelly had never met Anderson or Ford but was seen buying them drinks. The three men were interested in partying and agreed to go north to Columbus to meet women that Anderson and Ford knew. They left the bar and drove around in Connelly's automobile. At one point in time, they stopped at a gasoline station in Louisville to refuel the vehicle. Connelly

testified Anderson had taken his watch from him and Ford had stolen his money clip prior to stopping for gas. The three men then proceeded north to Columbus.

Connelly testified he sat in the front seat between Anderson and Ford, who was driving. Anderson showed Connelly a pocket knife which Anderson kept out for most of the trip in order to keep Connelly in the vehicle. Connelly also testified he had been stabbed fourteen times. Some of these wounds were inflicted during the trip.

Upon arriving in Columbus, the three men proceeded to the home of a friend of Ford. They then continued on to a liquor store. A witness testified that he saw two black men walking away quickly from the car at an intersection. The witness thought the white man, who was in the car with the other men, was hurt and got help. Ford and Anderson continued to the home of Janice Crippen, Ford's friend, where the men had stopped previously, who testified that Ford wore white pants with a blood stain, that Anderson had on blue jeans with dark stains on them, and that he had blood on his hands. Ford and Anderson left this residence and proceeded to the home of Ford's girlfriend. Ford and Anderson were arrested there in the morning. The officers found the blood stained clothing that Ford and Anderson had been wearing. Connelly's watch and money clip were found near where Anderson slept.

Connelly testified Anderson ordered him to remove his Masonic ring. Anderson tried to pull the ring off of the finger but could not remove it. Anderson then attempted to cut Connelly's finger off but could not because the knife was too dull. Connelly's finger was severely damaged as a result of Anderson's action. Connelly lost approximately nine pints of blood as a result of his wounds.

The first issue Anderson raises is whether the trial court erred in refusing to grant his motion to dismiss the robbery count involving the watch and money clip. Anderson argues the trial court lacked jurisdiction to

consider this crime because the watch and money clip were taken from Connelly while they were in Louisville. Anderson requests we take judicial notice that Louisville is not within Indiana and reverse the trial court's denial of his motion to dismiss.

■ This court has no difficulty in acknowledging that Louisville does not have the good fortune to be in Indiana. However, we do not believe the trial court erred by denying Anderson's motion to dismiss. Anderson's argument is premised upon the belief that the robbery of the watch and money clip were separate events from the occurrences in Indiana.

A review of the criminal venue statute, Ind.Code 35–1.1–2–1(e),[1] supports the trial court's ruling. I.C. 35–1.1–2–1(e) provides:

> If the commission of an offense commenced outside Indiana is consummated within Indiana, the offender shall be tried in the county where the offense was consummated.

It is well established that venue and jurisdiction are not the same thing, but this statute indicates that the Bartholomew Circuit Court was the proper court to try Anderson. Moreover, the Indiana case law extends jurisdiction to crimes commenced in Indiana and completed out of state where it is shown that the out of state crime was integrally related to the crimes in Indiana. *Conrad v. State,* (1974) 262 Ind. 446, 317 N.E.2d 789, *Pollard v. State,* (1979) 270 Ind. 599, 388 N.E.2d 496.

The facts do not support Anderson's premise that the robbery of the watch and money clip were separate events from the occurrences in Indiana. Connelly, Anderson, and Ford left the nightclub with the intent of going to Columbus. While the evidence established the watch and money clip were removed from Connelly's possession when he was in Kentucky, the evidence also showed Anderson kept Connelly at knifepoint while Ford was driving in Indiana, Anderson stabbed Connelly in Indiana, and Connelly was left bleeding profusely in Indiana. Upon arrival in Columbus, the

---

1. This statute has been subsequently repealed.

robbery continued as Anderson tried to remove Connelly's Masonic ring. Frustrated because he could not remove the ring, Anderson tried to cut off Connelly's finger. There is nothing in the record to indicate that Anderson or Ford ever abandoned their plans or that there was any type of digression from or cessation of the activities which began in Kentucky. We believe the evidence established a continuous transaction in which the events in Kentucky were integrally related to the occurrences in Indiana. Thus, jurisdiction was proper. *See, Conrad v. State, supra.* A person who commits a crime partly in one state and partly in another state may be tried in either state under the sixth amendment of the United States Constitution. *Lane v. State,* (1980) Fla., 388 So.2d 1022.

The second issue which Anderson raises is whether the trial court erred by refusing to give an instruction which Anderson tendered. The instruction would have instructed the jury that theft is a lesser included offense of robbery. The trial court submitted instructions regarding robbery as either a class A or class C felony and also gave an instruction on conversion. Anderson asserts theft is an inherently lesser included offense of robbery, *Hitch v. State,* (1972) 259 Ind. 1, 284 N.E.2d 783, and argues the trial court erred.

Indiana employs a two step analysis regarding the use of instructions on lesser included offenses. The first step involves a determination of whether the lesser offense is included within the crime charged and secondly, whether there is evidence of probative value from which the jury could find the defendant guilty of the lesser offense. *Roddy v. State,* (1979) Ind.App., 394 N.E.2d 1098. The supreme court has recognized the existence of two types of lesser included offenses: those offenses which are necessarily included because it is impossible to commit the greater offense without committing the lesser offense and those lesser offenses which may have been committed by the manner in which the greater offense was actually committed. *Jones v. State,* (1982) Ind., 438 N.E.2d 972. The court further elaborated upon the second step by stating:

> Of course, the fact that a lesser offense is "included" within the crime charged, as allegedly committed in the charging instrument, does not *ipso facto* entitle either the state or defendant to an instruction on the lesser and included offense. As per step two of the rationale and methodology outlined in *Lawrence v. State, supra,* and *Roddy v. State, supra,* it must also be determined whether the evidence warrants submission of the instruction to the jury. This second step appears to have been first considered and required in *Hash v. State, supra,* citing *Cole v. State,* (1921) 192 Ind. 29, 134 N.E. 867. (DeBruler, J., dissenting). In that case we held that although the lesser offense of theft was included in the greater offense of robbery, as charged, the evidence left no doubt but that the defendant was guilty of robbery or of no crime whatsoever. For the jury to have found that Hash had come by the stolen money by theft, rather than by robbery as per the victim's testimony, or by a chance finding of it upon the ground, following a fight with the victim, would have required it to disbelieve the testimony of both Hash and the victim and to speculate upon a third factual situation upon which there was no evidence.

438 N.E.2d at 975.

Anderson alleged that he did not rob Connelly but that Connelly had given him the watch and money clip for safekeeping and that he, Anderson, had failed to return these items. The State's evidence established that these items were taken from Connelly through force or threat of force. The trial court properly refused the theft instruction because the instruction did not pass the second step of the lesser included offense analysis. There was no evidence to show theft. Anderson either robbed Connelly or converted his property. There was no error in refusing the theft instruction and giving a conversion instruction.

Anderson argues the verdict finding him guilty of robbery is contrary to law because

the jury acquitted Ford of this charge. Connelly testified that Ford took his money clip and Anderson removed his watch. Anderson argues that it is fundamentally unfair that he be convicted by the same evidence which did not convince the jury to convict Ford.

▮ Anderson concedes that verdicts do not have to be consistent because each count of an indictment is treated separately. *Hicks v. State,* (1981) Ind., 426 N.E.2d 411. In addition to Connelly's testimony concerning Anderson, the watch and money clip were found very near Anderson when he was apprehended. Anderson had also made inconsistent statements regarding these items. Upon review of the sufficiency of the evidence, we will not reweigh the evidence nor judge the credibility of witnesses. *Troxail v. State,* (1982) Ind., 439 N.E.2d 153. Anderson's argument is an invitation to do both, which we must decline. It is not within the province of this court to interpret the thought processes of the jury in reaching their verdict. *Hicks v. State, supra.*

▮ Anderson next challenges the admission into evidence of his statement to the police. He objected to its admission because he alleged that he was not properly advised of his constitutional rights prior to making his statement. The facts disclose Anderson was read his constitutional rights at 8:55 a.m. and the police began taping his statement at 10:18 a.m. Anderson was also given the opportunity to read the form containing the police explanation of his constitutional rights. He signed a form waiving his rights. The officer first conducted an informal statement with Anderson, prior to taping the statement which was admitted. There was no break in the discussion prior to taping.

Anderson argues the one hour and twenty-three minute delay between the advisement of his rights and the taking of his statement renders his statement involuntary, and thus, he alleges the trial court erred by denying his motion to suppress. Our supreme court discussed the waiver of constitutional rights in *Brown v. State,* (1979) 271 Ind. 129, 390 N.E.2d 1000, where it states:

> The question of whether or not there has been a valid waiver of *Miranda* rights is controlled by determining, from the totality of circumstances, whether the defendant, after being advised of such rights, voluntarily chooses to forego them. We review this question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there is substantial evidence of probative value to support the trial court's finding. (Citations omitted.).

390 N.E.2d at 1002.

The court has also held that although it is a better practice to advise the accused at the beginning of each interview, *Miranda* warnings need not necessarily be repeated on each separate occasion. *Grey v. State,* (1980) Ind., 404 N.E.2d 1348. A gap of one hour and sixteen minutes between the advisement of rights and the giving of the statement has been upheld. *See, Harkins v. State,* (1981) Ind.App., 415 N.E.2d 139.

Judging from the totality of the circumstances, we remain unpersuaded that the trial court erred in admitting the statement into evidence. Anderson was fully advised of his rights at the beginning of interrogation, an informal interrogation began, and then, the statement was taped. This evidence is sufficient to support the trial court's ruling.

▮ The final issue Anderson raises is whether the trial court erred by imposing two consecutive maximum sentences of eight years. Anderson argues the imposition of aggravated sentences which are to be served consecutively is vindictive and manifestly unreasonable.

The trial court enhanced the sentences because Anderson had at least six prior felonies and approximately eleven misdemeanor convictions. It also found that Anderson committed a serious and brutal crime in which the victim could have easily died. The trial court was unable to find any mitigating factors.

The legislature has granted trial courts the discretion to determine whether sentences are to be served consecutively or concurrently. A trial court may, upon consideration of relevant facts and information, increase the basic sentences, impose consecutive sentences, or both. *Washington v. State,* (1981) Ind., 422 N.E.2d 1218. In light of Anderson's prior record, the dangerous nature of his acts, and the total absence of mitigating factors, we cannot find the court's enhancement of the sentence and imposition of consecutive sentences constituted an abuse of discretion.

Judgment affirmed.

RATLIFF and NEAL, JJ., concur.