James C. SIMMONS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–482A104.

Court of Appeals of Indiana,
Fourth District.

Nov. 14, 1983.

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

James C. Simmons, charged with armed robbery and convicted by a jury of the included offense of robbery (IND.CODE 35–42–5–1 (Supp.1981), class C felony), now appeals that conviction on the basis of several issues he perceives to be reversible error. They are not, and we affirm the trial court.

## ISSUES

Simmons raises the following for our review:

1. Did the trial court err in admitting into evidence a paring knife seized from Simmons's car, which was not relevant to the issues but rather tended to inflame and prejudice the jury?

2. Did the trial court err in admitting testimony concerning a statement made by Simmons without the presence of counsel?

3. Was it reversible error to give final instruction No. 5, regarding reasonable doubt, because it was confusing and lessened the State's burden of proof below the reasonable doubt standard?

4. Was final instruction No. 8 incorrect because it impermissibly shifted to Simmons the burden of disproving the element of intent as required for a conviction of robbery?

5. Was the evidence sufficient on robbery's element of "using or threatening the use of force" to support the jury's verdict?

6. Is a four-year sentence for this class C felony manifestly unreasonable?

## FACTS

On July 16, 1981, around 1:45 P.M., Simmons entered a liquor store in Lafayette, called the Still. Mike Wilson, the manager of the store, asked if he needed help and walked behind the counter. Simmons said, "Give me your money," and when Wilson did not appear to understand, he repeated his demand. Simmons refused the store's coin bag and commanded Wilson to open the register, at which time he put his hand to a bulge at his waist. Wilson saw what he thought was the outline of a revolver under Simmons's untucked shirt, particularly the outlines of a gun butt and hammer. Wilson complied with the order, and Simmons left the store with the contents of the register, approximately $295, after commanding Wilson to go to the back of the store. As soon as Simmons had exited, Wilson ran back to the counter, picked up

the shingle bar hidden there, and dashed outside. He testified he observed Simmons pulling out of his parking space in a late model blue El Camino without license plates. Simmons threw the shingle bar and hit the vehicle on the driver's side. Wilson immediately notified the police.

Shortly thereafter, a police officer found Simmons, who matched Wilson's description of the robber, sitting in a blue GMC Laredo (similar to an El Camino) with a dent on the driver's side and without license plates. Simmons was parked just outside Room 26 at the Sagamore Inn where he had checked in as Ray Charles sometime between 1:30 P.M. and 2:30 P.M. (The Sagamore Inn is approximately one and a half miles from the Still, three to five minutes driving time.) As the officer approached, Simmons said, "I'm your man. I don't want any trouble." The officer asked, "You mean you're admitting to the robbery?" And Simmons replied, "Yes."

Simmons was arrested and searched. He had $227 in his wallet (6—$20's, 5—$10's, 11—$5's, 2—$1's) and 66 one-dollar bills in his left pants pocket (all of which Simmons claimed was his as a result of his divorce three years before, an inheritance, and poker winnings). The police could find no weapon. When they took Simmons back to the Still, Wilson identified him as the robber and the vehicle as the one in which he saw Simmons drive away. Simmons was charged with robbery while armed with a deadly weapon, but the jury convicted him of the lesser included offense of robbery.

## DECISION

### Admission of Knife

■ During the State's case-in-chief, the prosecutor sought to and succeeded in entering into evidence a paring knife found in Simmons's vehicle. Simmons had filed a motion in limine to prevent any reference to the knife on the grounds of irrelevancy and prejudice and renewed those objections at trial when the knife was admitted into evidence. However, even if the admission was error, two specific points obviate the need to find this evidence is anything more than harmless error.

First, a picture of the knife was earlier admitted into evidence without objection. "The erroneous admission of evidence is not prejudicial when the same or similar evidence has been admitted without objection." *Morris v. State,* (1982) Ind.App., 433 N.E.2d 74, 79; *Moody v. State,* (1983) Ind., 448 N.E.2d 660. Secondly, the victim Wilson testified the knife could not have caused the bulge beneath Simmons's shirt, which scared him. The jury evidently believed this testimony because, in the absence of direct evidence of any other weapon, the jury did not find Simmons guilty of robbery committed while armed with a deadly weapon, and the knife was the only "deadly weapon" admitted into evidence. We see no error.

### Simmons's Admission Without Counsel

■ The day after his arrest, Simmons was taken to court. Although it is not clear for what purposes he went to court, it appears it was for determination of his qualification for a public defender. Officer Rafael Ramirez transported him and, as was his custom while driving prisoners to and fro, engaged Simmons in a desultory conversation on the way to court. Ramirez testified and Simmons himself corroborated that upon Simmons's leaving the court and entering the vehicle, *on his own initiative,* he told Ramirez, "I will plead guilty to robbery, but not to armed robbery." (Simmons's version: "maybe I should just admit robbery, you know, and get it over with.") Simmons now challenges the admission of this testimony for having been elicited without the presence of counsel in breach of the Sixth Amendment right to assistance of counsel.

We are not entirely certain that this statement is of much inculpatory value as an admission of guilt. But even if it were and it could have affected the jury's deliberations, it was not garnered in derogation of Simmons's constitutional rights.

The evil Simmons here is attempting to attack occurs when the government interrogates a criminal defendant without legal

representation, once adversary proceedings have commenced. The likelihood that a policeman could surreptitiously elicit incriminating evidence increases when a defendant cannot rely on advice of counsel. "Yet no such constitutional protection would ... come into play *if there'[were] no interrogation." Brewer v. Williams,* (1977) 430 U.S. 387, 400, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (Emphasis added.) What is meant by "interrogation" under the Sixth Amendment is not clearly ascertainable because so many cases confuse the Fifth Amendment challenges (right against self-incrimination) with those under the Sixth (right to assistance of counsel). *See Rhode Island v. Innis,* (1980) 446 U.S. 291, 300 n. 4, 100 S.Ct. 1682, 1689 n. 4, 64 L.Ed.2d 297. Regardless, *Brewer v. Williams,* the leading Sixth Amendment case, stands for the proposition that testimony based on statements made by criminal defendants is inadmissible when the police deliberately educe information in the absence of defense counsel. Such is not the case here.

Simmons uttered a spontaneous declaration, prompted by the recent courtroom experience and not by the presence of the police officer. There was no interrogation here, and Simmons's claim that his Sixth Amendment rights were abused is unwarranted. *See, e.g., Tacy v. State,* (1983) Ind., 452 N.E.2d 977 (Fifth Amendment: "A wholly volunteered and unsolicited statement by the accused is not the product of a custodial interrogation such that any advisement of rights need be given.); *Cobb v. State,* (1980) Ind., 412 N.E.2d 728 (Fifth Amendment: "Voluntary statements which are not the result of custodial interrogation, within the contemplation of *Miranda v. Arizona,* [ (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694], are properly admitted into evidence."); *Nading v. State,* (1978) 268 Ind. 634, 377 N.E.2d 1345 (Fifth Amendment: "An interrogation occurs only when officials intend to elicit, by whatever means, substantive evidence concerning criminal activity.")

*Final Instruction No. 5 (Reasonable Doubt)*

■ The trial court delivered the following final instruction:

"While the State must, in a criminal case, prove the defendant guilty beyond a reasonable doubt, it need not be proven beyond all possible doubt for such proof could seldom, if ever, be produced."

Record, p. 65. Simmons objected to this instruction on the grounds it was repetitive of another final instruction on reasonable doubt and would unduly emphasize the definition. On appeal, he argues the definition was confusing and an erroneous statement of the law. Simmons has waived all error concerning this instruction because one cannot object at trial on one ground and argue a different issue on appeal. *Vasquez v. State,* (1983) Ind., 449 N.E.2d 284.

■ Despite this waiver, we would find no error. This particular paragraph is an almost verbatim version of a portion of an instruction disputed in *United States v. Shaffner,* (7th Cir.1975), 524 F.2d 1021 *cert. denied* (1976) 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327. In *Shaffner,* that section was specifically disapproved. However, the court of appeals affirmed the conviction because, when read as a whole with the proper instructions, the reasonable doubt instruction was not as prejudicial to the defendant's case as it would have been had the factual questions been largely disputed or the evidence of the defendant's guilt not so overwhelming. In the case here, the evidence of Simmons's guilt was of sufficient magnitude that the jury could not have reasonably been affected by the instruction. There is no basis for reversal.

*Final Instruction No. 8 (Intent)*

■ The State submitted and the trial court read the following on the element of intent:

"The intent with which an act is done is a mental process and as such often remains hidden within the mind, and may not be capable of proof by direct evidence but may be inferred from outward manifestations or words or acts of the party, or other facts and circumstances surrounding the transaction."

Record, p. 68. Simmons objected:

"Instruction number eight, would contend that no element of specific intent in

this case and that, furthermore, the instruction tends to presume—it asks—it tells the jury it can presume intent from the manifestations or words of a party is improper."

Supplemental Record, p. 2. The objection as preserved on appeal argues the instruction improperly creates a rebuttable presumption impermissibly shifting to Simmons the burden of proof on the element of intent. The clear language of the instruction says nothing about presumptions but rather speaks of inferences. Simmons has failed to make any cogent argument about an alleged error in this instruction, and the issue is waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). We also refer Simmons to *Bonds v. State,* (1982) Ind., 436 N.E.2d 295, where our supreme court declared a substantially similar instruction to be a proper statement of the jury's inferential powers, a nonmandatory function, as opposed to the role of presumptions. This instruction was not error.

*Sufficiency of the Evidence*

█ Simmons was convicted of robbery as set forth in the following jury instruction:

"The crime of Robbery is defined by statute as follows: A person who knowingly or intentionally takes property from another person or from the presence of another person . . . by using or threatening the use of force . . . commits Robbery, a Class C felony."

Record, p. 61. Simmons asserts there is insufficient evidence he used or threatened to use force on Wilson. Simmons is incorrect.

The cases most closely on point developed under the old statute where one of the elements of robbery was taking property from another "by violence or by putting in fear." IND.CODE 35–13–4–6 (Burns 1975). Under that statute, there was certainly sufficient evidence to convict Simmons vis à vis authority of supreme court cases which upheld the principle that "the mere appearance that the defendant was in possession of a gun will be sufficient to establish the 'violence or by putting in fear' element of

robbery." *Lewis v. State,* (1969) 252 Ind. 454, 459, 250 N.E.3d 358, 361; *Jackson v. State,* (1971) 257 Ind. 477, 275 N.E.2d 538; *Cross v. State,* (1956) 235 Ind. 611, 137 N.E.2d 32; *see also* Annot., 61 A.L.R.2d 996 (1958). In *Cross v. State,* the following facts are instructive on the situations covered by this principle:

"On the morning of July 3, 1954, at approximately 5:30 a.m., two men, one of whom was identified as appellant, pulled up into the driveway with his hand in his pocket, walked inside the door, picked up the cash register, put it under his arm, walked out, threw it into the car, and the two men then entered the car and then drove away. Appellant said nothing to the complaining witness and took his hand out of his pocket when he was returning to the car. *The complaining witness saw no gun at any time, but did see appellant with his hand in his pocket, and said appellant had 'that' look on his face.* No conversation of any kind took place between appellant and the complaining witness. During the entire period of the offense the complaining witness was standing some thirty feet away from the front door of the filling station. The complaining witness testified he knew what was happening but wasn't about to do anything he could, saying he was too scared." (Emphasis added.)

235 Ind. at 613, 137 N.E.2d at 33 (Emphasis added.) We realize, of course, that the *Cross* case particularly focused on the "putting in fear" element of the old statute. This element is also found in the current statute, IC 35–42–5–1, which was in force in substantially the same form in 1981:

"(1) by using or threatening the use of force on any person; or (2) *by putting any person in fear*. . . ." (Emphasis added.)

The "putting in fear" element was not involved in Simmons's case here, but we still find *Cross v. State* useful because we believe it also applies to "using or threatening the use of force."

When the new robbery statute was originally proposed, "violence or by putting in fear" was replaced by "the use of force or by threatening the use of force" thereby dropping entirely the element of fear. As the Study Commission stated, this eliminated the inquiry relating to the victim. Indiana Criminal Law Study Commission Comments, IC 35–42–5–1 (West). It would thus appear that "putting in fear" is considered in a subjective manner as opposed to "using or threatening the use of force," which can be measured objectively without having to gauge the victim's reaction. This conclusion is bolstered by the supreme court's adoption of a definition for "putting in fear":

> " 'And when it is laid to be done by putting in fear, this does not imply any great degree of terror or affright in the party robbed; *it is enough that so much force, or threatening by word or gesture be used,* as might create an apprehension of danger, or induce a man to part with his property without or against his consent.' "

*Cross v. State,* 253 Ind. at 614, 137 N.E.2d at 33, quoting *State v. Luhano,* (1909) 31 Nev. 278, 283, 102 P. 260, 262 (Emphasis added.) "Using or threatening the use of force" can be, by our supreme court's definition, the objective causation of the subjective reaction of fear. *See also Lewis v. State, supra.* Thus, the principle enunciated in *Cross v. State,* convicting for the appearance of having a gun, equally applies to the new statutory section particularly "threatening the use of force" where the objective factors have been observed by the victim, regardless of whether he is put in fear. In the case here, Simmons's words, the bulge under his shirt, and his gestures toward that bulge, all creating the inference he possessed a gun, were sufficient to indicate he was threatening the use of force upon Wilson.

*Sentencing*

 Simmons lastly argues his four-year sentence (presumptive sentence, five years, IND.CODE 35–50–2–6) is manifestly unreasonable because the mitigating factors far outweighed the aggravating ones but that the trial court did not properly account for those mitigating factors. He points to the following as weighing in his favor: work record and stable character prior to 1981, low-key nature of crime, favorable presentence report, his alcoholism, and the absence of a prior criminal record. Simmons does not contend the trial court did not consider these factors. He does assert, however, that the trial court gave undue weight, as factors aggravating the presumptive sentence, to Simmons's three pending robbery charges in Lake County and that such pending charges are improper considerations. Arrests without resulting convictions are proper grounds for enhancing a sentence as "history of criminal activity" under IND. CODE 35–4.1–4–7(c)(2) (repealed 1983 Ind. Acts, P.L. 311 § 49). *Chamness v. State,* (1983) Ind., 447 N.E.2d 1086. Regardless, what Simmons fails to mention is that although no one was hurt in the robbery, the trial court also considered the nature of the crime committed (*see* IND.CODE 35–4.1–4–7(a) repealed 1983 Ind..Acts, P.L. 311 § 49) which included the threat of force, in addition to the pending charges.

Our difficulty with this issue is that we find nowhere that any time was *added* as a result of the aggravating circumstances. *See* IC 35–50–2–6 ("added for aggravating circumstances"). Rather, we see a mitigated sentence; time was *subtracted* from the presumptive sentence. *Id.* ("subtracted for mitigating circumstances"). Perhaps Simmons believes he is entitled to the *deletion* of more years, but we fail to find any aggravation in sentencing nor do we find the failure to subtract more to be error in view of the trial court's consideration of the legitimate aggravating factors. Under the circumstances, where our standard of review is whether the trial court abused its discretion, *Green v. State,* (1983) Ind., 451 N.E.2d 638, 639; *Bergdorff v. State,* (1980) Ind.App., 405 N.E.2d 550, we find no error here.

The trial court is in all things affirmed.

CONOVER, P.J., and YOUNG, J., concur.