Robert JOY, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–783A228.

Court of Appeals of Indiana,
First District.

March 8, 1984.

---

John A. Kesler, II, Terre Haute, for defendant-appellant.

Linley E. Pearson, Atty, Gen, Theodore E. Hansen, Deputy Atty, Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

From his convictions for burglary, a class C felony,[1] and theft, a class D felony,[2] in a Gibson Circuit Court jury trial, the defendant, Robert Joy, now appeals.

We affirm.

## FACTS

On July 18, 1978, employees of the Leland Lumber Company in Princeton, Indiana, arrived at work to discover the premises had been burglarized. A subsequent investigation revealed the fence surrounding the lumber yard had been cut, presumably with a pair of wire cutters found nearby, and two of the company's flat bed trucks had been driven through the opening into an adjoining cornfield. In addition, a small tractor owned by the company had been driven into the field and left near the trucks.

The lumber company premises consisted of a main building which housed a showroom and offices. Also on the premises were three detached storage sheds, two of which were completely open on one side to facilitate easy storage and removal of lumber. The entire premises was enclosed by a fence; on the north side with a chain link fence and a gate which served as the sole entrance to the lumber yard, and on the remaining three sides with a farm fence which was in a poor state of repair.

In the course of his investigation, Indiana State Trooper Joseph Fitch spoke with Larry Joe Taylor, who admitted his involvement in the crime and implicated the defendant. Taylor subsequently gave Fitch a statement wherein he stated that he, the defendant, the defendant's two brothers, Stanley and Delbert Joy, and two other individuals committed the burglary. According to Taylor, the defendant drove the group to the scene in a van, gave them a list of items he wanted to have stolen, and dropped them off. Taylor and the others then gained entry into the lumber yard by jumping over the farm fence and loaded the trucks with the materials specified by the defendant. Once loaded, they drove the trucks through the fence and transferred the lumber to a waiting semitrailer.[3] During this entire time, Taylor claims, the defendant remained in the van.

Upon leaving the field, the group took the lumber to the defendant's house in Pimento, Indiana, where it was eventually unloaded and used to construct a hog barn.[4]

---

1. Indiana Code section 35–43–2–1 (1979 Repl.).

2. Indiana Code section 35–43–4–2 (1979 Repl.).

3. According to Taylor, the tractor was used to extricate the semitrailer when it became mired in the cornfield.

4. Before erecting the hog barn, the defendant attempted to sell the lumber to a Hap Chandler.

Additional facts are stated in our discussion of the issues.

## ISSUES

In all, the defendant has stated 24 separate issues. For purposes of clarity, as well as brevity, we have distilled this number to the following:

1. Was there sufficient evidence to establish that a burglary was committed?

2. Did the trial court err in failing to read the charging informations to the jury?

3. Should the trial court have granted a new trial on the basis of newly discovered evidence which allegedly indicated a key witness against the defendant had committed perjury?

4. Did the trial court err in requiring the defendant to reveal on cross-examination that his brother Delbert was confined in a federal prison for the commission of an unrelated crime?

5. Should the trial court have accepted and read to the jury the defendant's tendered instruction concerning circumstantial evidence?

6. Did the trial court err in allowing Trooper Fitch to testify to matters contained in Taylor's statement?

7. Was the denial of defendant's request for an omnibus hearing reversible error?

8. Did the trial court err in rendering a sentence on both the burglary and theft counts and ordering the terms to be served consecutively?

9. Was the information charging the defendant with burglary jurisdictionally sufficient?

10. Did the trial court err in refusing the defendant's tendered instructions concerning the jury's right to believe or disbelieve the testimony of certain witnesses?

11. Did the trial court err in refusing the defendant's tendered instruction defining the terms "breaking and entering" and "building or structure", and by instructing the jury to give such terms their ordinary and common meaning?

## DISCUSSION AND DECISION

*Issue One*

The defendant first challenges the sufficiency of the evidence supporting the burglary conviction. Specifically, he contends the evidence is deficient with respect to the element of breaking and with respect to whether the fence and open storage sheds constituted structures. In addition, the defendant argues that even if the acts committed constituted a burglary, he cannot be held accountable since he did not enter the premises, but instead, remained in the van during the commission of the crime. The defendant is wrong in each and every respect.

In addressing the defendant's initial argument, we are bound by our well established standard of review. We will neither reweigh the evidence nor judge the credibility of witnesses. *Wilson v. State*, (1983) Ind., 455 N.E.2d 1120, 1122; *Coker v. State*, (1983) Ind., 455 N.E.2d 319, 322; *Napoli v. State*, (1983) Ind., 451 N.E.2d 35, 37. Rather, we look solely to the evidence and reasonable inferences drawn therefrom which support the verdict. *Thomas v. State*, (1983) Ind., 451 N.E.2d 651, 652, *quoting Loyd v. State*, (1980) Ind., 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105; *Napoli*, 451 N.E.2d 37; *McMillian v. State*, (1983) Ind., 450 N.E.2d 996, 999. Then, from this viewpoint, we will affirm the conviction if there is substantial evidence of probative value to support it. *McMillian*, 450 N.E.2d at 999; *Howard v. State*, (1982) Ind., 433 N.E.2d 753, 756.

■ At the time of this offense, the crime of burglary was defined in Indiana

Chandler, however, did not make a satisfactory offer and the defendant decided to keep the

materials.

Code section 35–43–2–1 (1979 Repl.),[5] as:

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, and a class A felony if it results in either bodily injury or serious bodily injury to any other person."

*Id.* Thus, to sustain the defendant's conviction for burglary in the instant case, the evidence must be sufficient to establish that a breaking and entering occurred and that the fence and/or the open storage sheds were either buildings or structures as contemplated in the statute.

Addressing first the defendant's contention that his conviction cannot stand even if his confederates committed a burglary, we direct his attention to the cases of *Harden v. State,* (1982) Ind., 441 N.E.2d 215, *cert. denied* — U.S. —, 103 S.Ct. 794, 74 L.Ed.2d 998 (1983), and *Proctor v. State,* (1979) 272 Ind. 357, 397 N.E.2d 980. The gist of these cases is that the acts of a confederate in the commission of a crime may be imputed to a defendant who did not personally commit each and every element of the offense. Indeed, as the supreme court noted in *Proctor,* "[a]n accomplice is criminally liable for everything done by his confederates which was a probable and natural consequence of their common plan." *Id.* at 983. *See also Wilson v. State,* (1983) Ind., 455 N.E.2d 1120, 1123; *Parks v. State,* (1983) Ind., 455 N.E.2d 904, 904–05; *Stroud v. State,* (1983) Ind., 450 N.E.2d 992, 996.

■ Accordingly, if in the instant case there is sufficient evidence of the commission of each of the requisite elements of burglary by either the defendant or his confederates, the acts of each may be imputed to him in order to sustain the conviction.[6] *See* Indiana Code section 35–41–2–4 (1979 Repl.).

Looking to the evidence most supportive of the judgment it reveals that the defendant's confederates entered the lumber yard by either hopping over or cutting their way through the fence. Once inside, they removed lumber and various other building materials from the open storage sheds, loaded them on the trucks, and drove them through the fence into the adjoining cornfield. In the defendant's view these acts did not constitute a burglary because, he asserts, there can be no breaking of a fence or an open storage shed and because neither the fence nor the sheds can be viewed as a building or structure.

Citing the aid of "Divine Providence" in his research, Appellant's brief at 60, the defendant directs our attention to *Day v. State,* (1976) Tex., 534 S.W.2d 681. Therein, the defendant cut through a chain link fence to enter a lumber yard. Once inside the fence, he entered a building on the premises by passing through an open doorway and proceeded to remove some of the lumber. The Texas court, applying that state's burglary statute,[7] held there had been no burglary because the fence did not constitute a building for purposes of breaking and because the defendant did not commit a breaking by passing through an open doorway into the building. In the court's view:

"The cutting and entry through the chain link fence in this case, although in violation of V.T.C.A., Penal Code Sec. 28.03, Criminal Mischief, in its injury to the owner's interest in the fence, and in violation of V.T.C.A., Penal Code Sec. 30.05, Criminal Trespass, in its injury to the owner's interest in the premises en-

---

5. For present law see Indiana Code section 35–43–2–1 (1983 Supp.).

6. From the record it is clear the defendant was heavily involved in the burglary even though he did not enter the premises of the lumber yard. He drove several of the confederates to the scene and then gave them a list of the materials he wanted stolen. Thus, any acts committed by the defendant's confederates in burglarizing the lumber yard may be imputed to him.

7. The Texas statute, unlike ours, merely prohibited the breaking and entering of a building and did not include the term structure.

closed by the fence, nevertheless was not an entry into a building in violation of V.T.C.A., Penal Code Sec. 30.02, Burglary, which is designed to protect the interests of owners in the security of habitations and buildings as those terms are defined in Sec. 30.01, supra. If a burglary was committed, it was not until the concrete block structure was entered."

*Day*, 534 S.W.2d at 683–84 (footnote omitted). Thus, relying on *Day*, the defendant argues the acts committed in the instant case cannot be construed as a burglary.

Divine providence notwithstanding, the defendant has ignored several other cases which are more readily analogous to the one at bar.

In *State v. Roadhs*, (1967) 71 Wash.2d 705, 430 P.2d 586, the defendant and his confederates gained entry into an enclosed power station compound by cutting three strands of barbed wire on top of a chain link fence and then climbing over. Once inside the compound, they began the task of gathering equipment stored in an open storage shed located on the premises. Apprehended while in the shed, the defendant was convicted of burglary.

Interestingly, the Washington statute defining burglary included both the term "building" and "other structure". Wash. Rev.Code section 9.19.020. While the term building was statutorily defined, the term structure was not. After concluding that a fence did not constitute a building, the Washington Supreme Court reasoned the term structure was intended to broaden the scope of the burglary statute and, in fact, included fences.

> "[W]here the fence is of such a nature that it is erected mainly for the purpose of protecting property within its confines and is, in fact, an integral part of a closed compound, its function becomes analogous to that of a 'building' and the fence itself constitutes a 'structure' subject to being burglarized."

*Roadhs*, 71 Wash.2d at 708–09, 430 P.2d at 588.

Relying upon the reasoning advanced in *Roadhs*, the Washington Court of Appeals held that a fence surrounding a power plant supply headquarters constituted a structure as contemplated by the burglary statute and affirmed the conviction of a defendant who had cut his way through the fence to gain entry. *State v. Livengood*, (1975) 14 Wash.App. 203, 540 P.2d 480.

Finally, in a case strikingly similar to the one now before us, an Oklahoma court held that the fence surrounding a lumber yard constituted a structure for purposes of that state's burglary statute. *Stanley v. State*, (1973) Okl.Cr.App., 512 P.2d 829. In *Stanley*, the defendant apparently gained entry into the lumber yard by climbing over a fence. Thus, the court observed:

> "The accused was found, without explanation, inside of the lumber yard with the testimony of three witnesses indicating the top of the gate fence had been 'bent down,' a condition apparently not existing prior to the entry. In *Roadhs*, supra, the court held the severance of three strands of wire at the top of a fence was sufficient to constitute a breaking. Likewise, considering the Oklahoma rule which generally sets forth a burglary may be an act of physical force, however slight, by which an obstruction to entry is forcibly removed, the evidence of force applied to the gate was sufficient to constitute a breaking."

*Stanley*, 512 P.2d 832 (citation omitted). *See also People v. Moyer*, (1981) Colo., 635 P.2d 553 (fenced dog kennel, for purposes of burglary statute, was not a building, but did constitute an "occupied structure").

In the instant case, we believe the fence surrounding the Leland Lumber Company was a "structure" as contemplated by our burglary statute. Its purpose, like the fence in *Roadhs*, was clearly "for the purpose of protecting property within its confines and [was], in fact, an integral part of a closed compound." *Id.* at 708–09, 430 P.2d at 588. Thus, when the defendant's confederates made their entry, either by "hopping" over or cutting through the

fence,[8] they committed a breaking as contemplated in Indiana Code section 35–43–2–1 (1979 Repl.).[9]

*Issue Two*

The defendant next predicates error on the trial court's failure to include in its instruction number two the informations charging him with burglary and theft. The defendant contends this omission deprived the jury of any knowledge of the actual charges and the essential elements of the crimes charged. The defendant's argument, however, has several obvious flaws.

 The defendant's objection to the instruction was as follows: "The Defendant would object to the giving of the Court's Instruction Number 2, as it was an incorrect statement of law; that it is irrelevant, *and that Instruction Number 2 omits the charge which the Defendant has stood trial for.*" Record at 87 (emphasis supplied). The trial court, however, did instruct the jury of the *charges* in its instruction, those being burglary and theft. Record at 72. The defendant may not now change the grounds of his objection and argue that the entire charging informations should have been read. *Vasquez v. State,* (1983) Ind., 449 N.E.2d 284, 286; *Simmons v. State,* (1983) Ind.App., 455 N.E.2d 1143; *Dougherty v. State,* (1983) Ind.App., 451 N.E.2d 382, 386; *Crafton v. State,* (1983) Ind.App., 450 N.E.2d 1042, 1053. Moreover, the defendant failed to tender a more complete and satisfactory instruction, thus waiving any possible error. *Lane v. State,* (1983) Ind., 451 N.E.2d 659, 660; *Priestley v. State,* (1983) Ind.App., 451 N.E.2d 88, 91.

 The defendant's related argument, that the trial court's instruction failed to adequately inform the jury of the essential elements of the crimes charged, is likewise

without merit. Mindful that instructions are to be considered in reference to one another and in their entirety, *Woolston v. State,* (1983) Ind., 453 N.E.2d 965, 969; *McMillian v. State,* (1983) Ind., 450 N.E.2d 996, 998, we find that all the essential elements of burglary and theft were conveyed to the jury by the reading of the state's instructions numbers one and two. Record at 83–84. By reading these instructions the trial court adequately informed the jury of the elements. *Bryan v. State,* (1983) Ind., 450 N.E.2d 53, 62; *Thomas v. State,* (1981) Ind., 420 N.E.2d 1216, 1219; *Shanholt v. State,* (1983) Ind.App., 448 N.E.2d 308, 318, *trans. denied.*

*Issue Three*

The defendant next submits the trial court erred in denying him a new trial on the basis of newly discovered evidence which tended to indicate his brother, Stanley Joy, committed perjury when he implicated the defendant in the commission of the crimes. In support of this argument the defendant directs our attention to the affidavit of his sister Itha McCalister. Therein, Itha states that during a visit with Stanley at the Westville prison, he informed her that he lied at the defendant's trial when he claimed to be present during the burglary and in implicating the defendant. Itha also states Stanley made a similar confession to their mother, Virginia Joy, in a letter which she attaches as an exhibit to her affidavit. The defendant's view of this uncontradicted affidavit is that it constituted newly discovered evidence which warranted the granting of a new trial. He is wrong.

 When a motion to correct errors is premised upon evidence outside the record, the motion "shall be supported by affidavits showing the truth of the grounds set out in the motion ...." Indiana Rules

---

8. We perceive no difference in our conclusion depending on how the confederates got past the fence. Whether they hopped over it, drove through it, or cut it with wire cutters is of no import. The fact that they crossed over a structure intended to keep them out is sufficient to establish a breaking occurred.

9. By reaching this conclusion we need not concern ourselves with the question of whether a breaking occurred when the confederates entered the open storage sheds to remove the lumber.

of Procedure, Trial Rule 59(H)(1). The defendant fails to recognize that Itha's affidavit merely presents her statements and in no way verifies the truth of Stanley's recantation to her or their mother in the letter. These allegations, allegedly made by Stanley, could only be verified by him. Moreover, affidavits such as Itha's, which contain only hearsay are insufficient to place the information contained therein before a trial court in a motion to correct errors. *Lemont v. State*, (1976) 168 Ind. App. 486, 491, 344 N.E.2d 88, 91, *trans. den.* (1977). Thus, absent the requisite affidavit, this "newly discovered" evidence may not be considered on appeal. *McFarland v. State*, (1979) 179 Ind.App. 143, 149, 384 N.E.2d 1104, 1108.

 This conclusion notwithstanding, even if Itha's affidavit and accompanying exhibit are accepted as true, they did not constitute sufficient grounds for the granting of the defendant's motion. Affidavits in support of an allegation of newly discovered evidence must contain statements of fact showing the evidence: was discovered subsequent to the trial; is not merely impeaching or cumulative of other evidence; is material and relevant; is not privileged or incompetent; was not capable of being discovered prior to trial even in the exercise of due diligence; is worthy of credit; and finally, that it will probably produce a different result. *Goodwin v. State*, (1982) Ind., 439 N.E.2d 595, 600–01; *Smith v. State*, (1982) Ind., 429 N.E.2d 956, 958; *Emerson v. State*, (1972) 259 Ind. 399, 407, 287 N.E.2d 867, 871–72.

In the instant case, the defendant has failed to establish how the evidence he proffers would produce a different result in a new trial. Further, it merely impeaches Stanley's prior testimony. Therefore, even if we were to consider this evidence it would not justify the granting of a new trial.

### Issue Four

During the cross-examination of the defendant, the prosecutor inquired as to the whereabouts of his brother Delbert. Not wishing the jury to be informed that Delbert had taken up residence at a federal penitentiary, the defendant's attorney objected on grounds of relevancy. The objection was overruled and the defendant now argues this question was merely intended to inflame the jurors by informing them of his brother's criminal status.

 Trial courts possess broad discretion in determining the parameters of cross-examination, *Baldwin v. State*, (1980) Ind., 411 N.E.2d 605, 608; *Gradison v. State*, (1973) 260 Ind. 688, 707, 300 N.E.2d 67, 80, and there can be no reversal on the basis of its determination absent a gross abuse of that discretion. *Baldwin; Gradison.* Objections, moreover, premised solely upon grounds of relevancy are too general to present any question for appellate review. *Williams v. State*, (1983) Ind., 455 N.E.2d 299, 305; *Wallace v. State*, (1983) Ind., 453 N.E.2d 245, 247; *Daniels v. State*, (1983) Ind., 453 N.E.2d 160, 170. The issue is thus waived.

### Issue Five

 The defendant next contends the trial court erred when it refused to give his tendered instruction concerning circumstantial evidence. However, because there was both direct and circumstantial evidence introduced at trial, an instruction solely on circumstantial evidence was not required and the trial court did not err in refusing it. *Bryan v. State*, (1983) Ind., 450 N.E.2d 53, 62–63; *Roarks v. State*, (1983) Ind., 448 N.E.2d 1071, 1074–75; *Bales v. State*, (1981) Ind., 418 N.E.2d 215, 217.

### Issue Six

The defendant next objects to the admission of testimony of Trooper Fitch regarding a statement made by Larry Joe Taylor in which he implicated the defendant in other crimes. The several grounds advanced by the defendant include an assertion that this testimony was hearsay, given in violation of a previously granted motion *in limine*, and irrelevant as it pertains to unrelated crimes.

In the defendant's view, Trooper Fitch's testimony regarding Taylor's statement was inadmissible hearsay because it consisted of out-of-court assertions made by Taylor. Moreover, the defendant argues, the statement impermissibly implicated him in the commission of another burglary and in an attempt to sell stolen merchandise to a known "fence", Hap Chandler.

▬▬▬ As the state has correctly stated in its brief, the admission of Fitch's testimony comported with the exception to the hearsay rule as embodied in *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. Essentially, *Patterson* held that a declarant's prior out-of-court statements could be admitted at trial despite their hearsay nature provided the declarant is present and available for cross-examination. *Id.* at 57–58, 324 N.E.2d at 484–85. Taylor was present and available, and in fact, was subjected to cross-examination concerning his statement.[10] There was, therefore, no error in the admission of this testimony. *Watkins v. State*, (1983) Ind., 446 N.E.2d 949, 960; *Lewis v. State*, (1982) Ind., 440 N.E.2d 1125, 1129, *cert. denied* — U.S. —, 103 S.Ct. 1895, 77 L.Ed.2d 284 (1983); *Carter v. State*, (1980) Ind.App., 412 N.E.2d 825, 828–29, *trans. denied* (1981).

▬▬▬ The defendant also contends the trial court erred in failing to enforce a previously granted motion *in limine* which prohibited the introduction of evidence not furnished the defendant prior to trial. In particular, the defendant contends the admission of Taylor's statement violated this order because it did not contain certain

information alluded to by Trooper Fitch when he testified to the contents of the statement.[11] This information, regarding the "casing" of the lumber yard by the defendant and Taylor prior to the burglary, was, however, admitted without any objection made by the defendant. Accordingly, any error in its admission has been waived. *Wilhelm v. State*, (1983) Ind., 455 N.E.2d 595, 598; *Minneman v. State*, (1982) Ind., 441 N.E.2d 673, 675, *cert. denied* — U.S. —, 103 S.Ct. 2099, 77 L.Ed.2d 307 (1983); *Haynes v. State*, (1982) Ind., 431 N.E.2d 83, 85.

▬▬▬ Furthermore, we fail to see how the admission of Taylor's statement contravened the previously granted motion *in limine*. The only other ground asserted by the defendant in opposition to its admission was that it contained hearsay. However, as we have previously discussed, the admission of the statement was permissible under the *Patterson* rule.[12]

▬▬▬ The defendant's final argument with regard to Trooper Fitch's testimony concerns the references made therein to Hap Chandler as a known "fence". After five other witnesses had testified, the defendant made the following motion to strike Fitch's testimony:

"The Defendant would renew its objection made yesterday during the testimony of State Trooper Fitch when State Trooper Fitch was allowed to testify concerning the reputation evidence was purely hearsay, rumor, speculation and conjecture and that Trooper Fitch should not have been allowed to testify concern-

---

**10.** In addition, the testimony concerning the defendant's contacts with Hap Chandler were admissible under the *res gestae* exception inasmuch as they related to his efforts to sell the stolen lumber to Chandler and thus, merely completed the story of the crime. *See Tapp v. State*, (1980) Ind.App., 406 N.E.2d 296, 297–98.

**11.** Apparently not all of Taylor's statement to police was recorded and given to the defendant prior to trial.

**12.** Even assuming, *arguendo,* that the statement was not admissible under *Patterson*, we do not believe the trial court erred. In *Manning v.*

*Allgood,* (1980) Ind.App., 412 N.E.2d 811, we wrote:

"The purpose of a motion in limine is merely to prevent prejudicial remarks from being made in the presence of the jury. To preserve error for appeal, the trial court must rule on the evidence during trial."

*Id.* at 817 (citation omitted). Likewise, in the instant case, the trial court was not bound to observe the previously granted motion *in limine* when the state introduced the statement of Taylor during Trooper Fitch's testimony. Rather, the burden rested upon the defendant to object to this evidence if he wished to preserve the issue for appeal.

ing the reputation of Mr. Chandler. And at this time the defense would renew its objection made at that time and ask the Court to reconsider its ruling and ask that the Court sustain the objection, strike the testimony from the record, and admonish the jury to disregard said testimony."

Record at 339. It was the duty of the defendant to preserve any possible error, *Muday v. State*, (1983) Ind.App., 455 N.E.2d 984, 988, however, by delaying so long, the defendant has waived any error. *Cook v. State*, (1980) Ind.App., 403 N.E.2d 860, 867, *trans. denied.* Such motions must be made in a timely fashion, *Haynes v. State*, (1980) Ind.App., 411 N.E.2d 659, 665–66, and not after five other witnesses have testified.

Moreover, none of the objections raised by the defendant at the time of Fitch's testimony were sufficient to preserve an appealable issue. In the first instance in which Fitch refers to Chandler as a fence, it is in response to questioning by the defendant's attorney during recross-examination. The defendant made no motion to strike this testimony, thereby opening the scope of the state's re-redirect examination to this area of inquiry. *Rebstock v. State*, (1983) Ind., 451 N.E.2d 1083, 1086; *Kimble v. State*, (1983) Ind., 451 N.E.2d 302, 306. Thus, he may not now complain of the question propounded by the state regarding Chandler in its subsequent examination of Fitch. However, even if the defendant had not opened the scope to include the state's questions, neither of his other two objections preserved error. By objecting on grounds that a question was leading, Record at 247, and arguing on appeal that it was inflamatory, presents no issue for appellate review. *Vasquez v. State*, (1983) Ind., 449 N.E.2d 284, 286; *Simmons v. State*, (1983) Ind.App., 455 N.E.2d 1143, 1146; *Dougherty v. State*, (1983) Ind.App., 451 N.E.2d 382, 386. Likewise, an objection on grounds of relevancy, Record at 249, is too general to preserve any possible error. *Hyde v. State*, (1983) Ind., 451 N.E.2d 648, 649–50.

*Issue Seven*

The defendant further argues that the trial court erred in denying his request, joined by the state, to conduct an omnibus hearing prior to trial. The defendant predicates this allegation on the mandatory provisions of Indiana Code section 35–36–8–1 (1983 Supp.), which provides, *inter alia:* "(a) This subsection applies to persons charged with a felony. A date, known as the omnibus date: (1) *Must* be set by a judicial officer at the initial hearing...." *Id.* (emphasis supplied). Based upon this seemingly mandatory language, the defendant submits the trial court erred in refusing to hold the hearing.

The defendant, however, has ignored the fact that this section, which became effective on September 1, 1982, was not applicable to his trial. Applicable at the time the informations were filed in the instant case were the provisions of Indiana Code section 35–4.1–3–1 (1979 Repl.). It provided, in pertinent part: "(a) At any time after the filing of the indictment or information and before the commencement of trial, the court, upon motion of any party or upon its own motion, *may* order an omnibus hearing." *Id.* (emphasis supplied). Notwithstanding the fact the trial herein occurred after the repeal of this provision, the legislation accomplishing the repeal stated:

"The repeal by this section of a law or part of a law does not affect any rights or liabilities accrued, or any proceeding begun, before September 1, 1982. The rights, liabilities, and proceedings are continued, and punishments, penalties, or forfeitures shall be imposed and enforced under the repealed laws as if this section had not been enacted."

Acts 1981, P.L. 298, § 9(b). Thus, inasmuch as the informations were filed on April 13, 1982, the defendant's trial was governed by the repealed provision with regard to the granting of an omnibus hearing.

Generally, penal statutes must be strictly construed, *Pennington v. State*, (1981) Ind., 426 N.E.2d 408, 410; *Cape v. State*,

(1980) 272 Ind. 609, 400 N.E.2d 161, 164; *Och v. State*, (1982) Ind.App., 436 N.E.2d 319, 321, (on rehearing), *trans. denied*, but they are not to be given such a narrow construction so as to exclude cases fairly within their ambit, *Cape*, 400 N.E.2d at 164, or to the point the intention of the legislature is defeated. *State v. Bigbee*, (1973) 260 Ind. 90, 292 N.E.2d 609, 611; *Lasko v. State*, (1980) Ind.App., 409 N.E.2d 1124, 1127; *Hanic v. State*, (1980) Ind. App., 406 N.E.2d 335, 338. Thus, relying on the presumption that the word "may" generally connotes a discretionary meaning, *Noble v. City of Warsaw*, (1973) 156 Ind.App. 618, 622–23, 297 N.E.2d 916, 919, *trans. denied; Sherrard v. Board of Commissioners of the County of Fulton*, (1972) 151 Ind.App. 127, 131, 278 N.E.2d 307, 309, *trans. denied*, we believe the statute conferred discretion upon the trial court in determining whether an omnibus hearing should be granted. The defendant has failed to show how the denial of the hearing represented an abuse of discretion or how it resulted in any prejudice to him in the preparation of his case. Accordingly, we find no error in the trial court's ruling.

*Issue Eight*

The defendant next launches a twofold attack on his convictions, contending first that the theft was merely a lesser included offense of the burglary, and consequently, that the sentences of three and seven years, ordered to be served consecutively, subjected him to double jeopardy. In the defendant's view, the theft and burglary arose from the same set of circumstances and therefore make his convictions on both counts erroneous.

█ The defendant is correct that he may not be convicted of both a greater offense and a lesser included offense arising from the same acts, *Smith v. State*, (1982) Ind., 429 N.E.2d 956, 959, or given two sentences therefor. *Bean v. State*, (1978) 267 Ind. 528, 533, 371 N.E.2d 713, 716. However, this did not happen in the instant case.

█ Whether one offense is a lesser included offense of another must be deter-

mined by looking to the elements of each. *See Blockburger v. United States*, (1932) 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309. The two offenses may be considered separate only if each requires the proof of an element which the other does not. *Elmore v. State*, (1978) 269 Ind. 532, 534, 382 N.E.2d 893, 895, *quoting Brown v. Ohio*, (1977) 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194. Thus,

> "To obtain a conviction for burglary, it is not necessary for the state to prove that the defendant committed theft or any other felony since the burglary is complete upon breaking and entering with mere intent to commit a felony. Similarly, a conviction for theft may obtain without proof of a breaking and entering. *Thus, the two offenses are not the same and separate sentences may be imposed for each.*"

*Elmore*, 269 Ind. at 540, 382 N.E.2d at 898 (emphasis supplied). *See also Quire v. State*, (1983) Ind., 449 N.E.2d 1083, 1084–85.

█ In the instant case, the defendant's convictions on both counts were proper since each offense required proof of an element which the other did not. To obtain the burglary conviction, the state was required to prove a breaking and entering of the lumber yard with an intention to commit a felony therein. Ind.Code § 35–43–2–1. In contrast, to convict the defendant of theft, the state was required to prove he knowingly and intentionally exerted unauthorized control over the property of another person with the intent to deprive them of the property. Ind.Code § 35–43–4–2. Clearly, the offenses required proof of different elements; and, it is of no import that the felony charged under the burglary count was the theft. *Quire*, 449 N.E.2d at 1084–85; *Mitchell v. State*, (1979) 272 Ind. 369, 398 N.E.2d 1254, 1259. Consequently, because the defendant's acts constituted the commission of two separate offenses, he was not subjected to double jeopardy when given two separate sentences. *Smith v. State*, (1983) Ind., 455

N.E.2d 346, 354–55; *Potter v. State*, (1983) Ind., 451 N.E.2d 1080, 1082; *Anderson v. State*, (1983) Ind., 448 N.E.2d 1180, 1187; *Elmore*, 269 Ind. at 541, 382 N.E.2d at 898.

Furthermore, the determination of whether to impose concurrent or consecutive sentences is committed to the sound discretion of the trial court. Indiana Code section 35–50–1–2(a) (1979 Repl.). *See Taylor v. State*, (1982) Ind., 442 N.E.2d 1087, 1091–92; *Richardson v. State*, (1981) Ind., 429 N.E.2d 229, 231–32; *Anderson v. State*, (1983) Ind.App., 452 N.E.2d 173, 178. Provided the trial court does not abuse its discretion, and articulates facts supporting its decision, Indiana Code section 35–50–1A–7 (1979 Repl.), we will not disturb its decision. Herein, the trial court observed this standard and made the requisite findings of aggravating circumstances to justify its decision to sentence the defendant to consecutive terms. Record at 100. Therefore, we find no abuse of discretion in the trial court's sentencing of the defendant.

*Issue Nine*

The defendant also argues the charging information for burglary was jurisdictionally deficient because it failed to state the offense for which he was charged. The defendant, however, has failed to support this allegation with any cogent argument thus waiving any possible error. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7); *Hise v. State*, (1983) Ind., 452 N.E.2d 913, 914; *Alexander v. State*, (1983) Ind., 449 N.E.2d 1068, 1073; *Huff v. State*, (1983) Ind.App., 443 N.E.2d 1234, 1240.

Notwithstanding the defendant's failure to present cogent argument on this issue, any argument would have been unavailing in light of his failure to challenge the information by a timely filed motion to dismiss. *Brown v. State*, (1982) Ind., 442 N.E.2d 1109, 1114; *Lisenko v. State*, (1976) 265 Ind. 488, 492, 355 N.E.2d 841, 843; *Howard v. State*, (1982) Ind.App., 431 N.E.2d 868, 870; *Pettigrew v. State*, (1975) 165 Ind.App. 390, 392, 332 N.E.2d 795, 797.

*Issue Ten*

The defendant next charges the trial court erred in either refusing to read, or read as tendered, certain instructions pertaining to the credibility of witnesses. The first instruction was read to the jury as follows, but with the italicized portion omitted:

"I instruct you that if you find that any witness who has testified in this case is testifying in exchange for immunity from prosecution or punishment for himself, or with the expectation of receiving leniency or favorable treatment for himself relative to criminal activity which he himself is involved in, *such testimony should be cautiously received and carefully scrutinized by the jury.* And you have the further right and duty to consider whether such witness' testimony has been affected by his own personal interest or for personal advantage, revenge, or prejudice against the Defendant."

Record at 68 (emphasis supplied). The defendant claims this instruction, in addition to his instruction number four which the trial court refused,[13] should have been read as tendered because they were proper statements of the law and since the above-quoted instruction was confusing as read without the portion excised by the trial court.

The defendant's contentions notwithstanding, the trial court was not obliged to read the instructions merely because they represented correct statements of the law. *Drollinger v. State*, (1980)

---

**13.** Instruction number four read:
"If you believe from the testimony in this case that any witness has willfully and intentionally testified falsely as to any material fact in this case, intending by such false evidence to mislead or deceive you as to the truth of the case, you may disregard the whole or any part of the testimony of such witness, except as it may be corroborated by other credible evidence, or you may give such testimony the weight to which you think it is entitled, if any."
Record at 63.

Ind., 408 N.E.2d 1228, 1244, *quoting Jacks v. State*, (1979) 271 Ind. 611, 623, 394 N.E.2d 166, 174. Furthermore, instructions concerning the credibility of witnesses must be general in nature and should not single out any particular witness for closer scrutiny. *Morris v. State*, (1977) 266 Ind. 473, 478, 364 N.E.2d 132, 136, *cert. denied* 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462; *Lewis v. State*, (1976) 264 Ind. 288, 297, 342 N.E.2d 859, 864; *Evans v. State*, (1973) 261 Ind. 148, 156, 300 N.E.2d 882, 886; *Turner v. State*, (1972) 259 Ind. 344, 347–48, 287 N.E.2d 339, 341. By refusing to read the stricken portion of the instruction, the trial court was merely editing it to conform to the requirements of the law. The fact that the instruction, as edited, may not have been a model of clarity, is not, absent an abuse of discretion, grounds for reversal. *McCabe v. State*, (1979) 272 Ind. 196, 396 N.E.2d 895, 898. Therefore, we do not believe the trial court erred in reading the edited instruction.

Moreover, we do not believe the trial court erred in refusing to read the defendant's instruction number four. By reading its own instruction on credibility, record at 76, the jury was adequately informed as to this issue. *Shanholt v. State*, (1983) Ind.App., 448 N.E.2d 308, 318, *trans. denied*.

*Issue Eleven*

The defendant's final argument concerns the trial court's refusal to read his tendered instruction defining the terms "breaking and entering" and "building or structure". In the defendant's view, these words are terms of art which should have been explained to the jury. The defendant is wrong.

Where statutory language, such as that in question, "is not unconstitutionally vague or misleading, it is generally acceptable to give instructions in the exact language of the statute." *Vaughan v. State*, (1983) Ind.App., 446 N.E.2d 1, 5–6. *See also Kiper v. State*, (1983) Ind., 445 N.E.2d 1353, 1359–60; *Taylor v. State*, (1981) Ind., 420 N.E.2d 1231, 1234; *Zarnik v. State*, (1977) 172 Ind.App. 593, 604, 361 N.E.2d 202, 208, *trans. denied*.

Further, the decision of whether to instruct the jury with definitions of statutory terms is left to the sound discretion of the trial court, *Lock v. State*, (1980) Ind., 403 N.E.2d 1360, 1372, and it may choose to allow the jury to "rely upon its common sense understanding of the word[s] and the context in which [they are] used." *Id*. This is precisely what the trial court did in the instant case when it instructed the jury that "any words not defined in these instructions are to be given the common, ordinary or colloquial definition." Record at 82. Thus, absent a showing by the defendant that the trial court abused its discretion, we do not believe it erred in refusing to give his tendered instructions defining the statutory terms.

Judgment affirmed.

NEAL, P.J., and ROBERTSON, J., concur.