JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, James Chambers, appeals his conviction in the Cuyahoga County Court of Common Pleas for breaking and entering, R.C. 2911.13. For the reasons below, we affirm.
 {¶ 2} The charges in this case arose from an incident that occurred on July 15, 2005. On that date, Chambers entered the Wilkoff and Son's Scrap yard after operating hours and without an appointment. The gate was locked at this time, and no unauthorized personnel were allowed on the premises. Wilkoff security guards spotted Chambers picking up scrap metal found in the open, but within the yard's fenced confines. Because no one was authorized to be on the premises at that time, security assumed that Chambers had entered without permission and by stealth. Chambers was also spotted handing scrap metal over the fence to two other men.
 {¶ 3} After he realized that security had spotted him, Chambers dropped the scrap metal and fled. Security then notified the Cleveland Police Department. When police arrived, security described the individual and identified him as James Chambers, a man they had in the past found in the yard. Police subsequently saw a man fitting that description who was walking near the yard. They apprehended him and identified him as James Chambers.
 {¶ 4} Wilkoff and Son's Scrap yard is an industrial complex consisting of three large intersecting scrap yards enclosing a business office. The yard is entirely enclosed by a tall fence with barbed wire and secured with locks. The business office is located within the industrial complex and is open to the public during operating hours. The scrap metal is both enclosed and lying in the open throughout the yard. The public is not permitted in the scrap yard without appointment.
 {¶ 5} Chambers raises three assignments of error, the first of which follows:
THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AS TO THE CHARGE.
 {¶ 6} Chambers argues that the trial court should have accepted his motion for acquittal because the evidence presented at trial was not sufficient to convict him of the charge of breaking and entering. Crim. R. 29(A) states:
Motion for judgment of acquittal. The court on motion of the defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
 {¶ 7} When a court reviews a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307. "In essence, sufficiency is a test of adequacy. Whether evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins
(1991), 78 Ohio St. 380, 386.
 {¶ 8} Essentially, Chambers argues that even if the jury found the evidence presented against him to be true, it would not be sufficient to support the charge against him. The indictment against Chambers reads as follows: "and by force, stealth, or deception, [Chambers] trespassed in an unoccupied structure, the property of Wilkoff and Sons, with the purpose to commit therein any theft offense as defined in Section 2913.01 of the Revised Code or a felony." Chambers claims that this language indicates he was charged under section (A) of R.C. 2911.13. The entire section reads as follows (emphasis added):
 {¶ 9} R.C. 2911.13 Breaking and Entering
(A) No person by force, stealth, or deception shall trespass in an unoccupied structure with purpose to commit therein any theft offense as defined in section 2913.01 of the Revised Code or any felony.
(B) No person shall trespass on the land or premises of another, with purpose to commit a felony.
 {¶ 10} Chambers contends that the scrap yard in which he allegedly trespassed was not a structure and, therefore, that the evidence is insufficient to convict him under R.C. 2911.13(A). We disagree and find that the fenced-in Wilkoff scrap yard is a "structure" for purposes of the statute.
 {¶ 11} The Ohio Revised Code gives no definition of what constitutes an "unoccupied structure." However, R.C. 2909.01(C) does define an "occupied structure":
"Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, orother structure, vehicle, or shelter, or any portion thereof * * *. (Emphasis added.)
 {¶ 12} In State v. Carroll (1980), 62 Ohio St.2d 313,314-315, the Ohio Supreme Court used the definition of "occupied structure" to determine the definition of "unoccupied structure." The court began its analysis by examining the Legislative Committee Comment to R.C. 2911.13. The Comment states, in part: "This section [the breaking and entering statute] defines an offense identical to burglary, except that the structure involved in a violation of this section is unoccupied rather than occupied." Thus, as The Proposed Ohio Criminal Code (1973), later adopted by statute, said, "* * * an unoccupied structure would include any structure not classified as occupied under proposed section 2909.01 (Definitions)."[1]
 {¶ 13} The Eleventh Appellate District, in State v.Barksdale (Dec. 31, 1987), Lake County App. No. 12-117, 1987 Ohio App. Lexis 10444, also used the definition of an occupied structure in R.C. 2909.01(C) to help determine the definition of an "unoccupied structure." In Barksdale, the defendant cut a fence and entered a secured yard that surrounded storage units. In that case, the court found that the fenced-in yard was not an "unoccupied structure" for purposes of the breaking and entering statute.
 {¶ 14} In its analysis, the Barksdale court applied the rule of construction known as "Expressio Unius Est Exclusio Alterius," which holds "* * * that to express or include one thing implies the exclusion of the other, or the alternative."Black's Law Dictionary (8 Ed.Rev. 2004) 620. Noting that R.C.2909.01(C) listed specific examples of what constitutes a "structure," the court applied the rule and concluded that the list was to be seen as exclusive rather than illustrative. Not finding a fenced-in yard in that list, the court held that it was not a structure and thus acquitted the defendant of the breaking and entering charge.
 {¶ 15} When the legislature included the phrase "or other structure," however, the Ohio General Assembly evinced a strong intent not to make the list of enumerated examples exclusive. This broad phrase clearly implies that entities not listed in R.C. 2909.01(C) could also be deemed "structures" for purposes of relevant statutes. In other words, the list is illustrative, not exclusive.
 {¶ 16} Preliminarily, we note that, if this fenced-in scrap yard were enclosed at the top with a roof, there would be little dispute as to whether it constituted a "structure" for purposes of the statute. The absence of a roof, however, does not change the interest this fence seeks to protect — the same interest the crime of breaking and entering seeks to protect — property. One of the examples listed in the statutory definition of "occupied structure" is a "watercraft." Notably, many "watercrafts" lack a roof. Thus, the legislature clearly did not require an entity to feature a "roof" in order to be considered a "structure."
 {¶ 17} The language of this statute furnishes no express criterion that would restrict a phrase as general as "or other structure." The Barksdale court, however, found that "* * * each of the specific enumerations contained in the statute evidence an inherent element of confinement, housing, or protection not found in a fenced in yard." Barksdale, supra at 2. We agree that the statutory examples imply these elements. We do not agree, however, that these elements cannot be found in a fenced-in and locked yard in which scrap has been located and is part of a business. On the contrary, such a fenced-in yard may evidence an inherent element of confinement, housing, or protection. The crime of breaking and entering, just like the crime of burglary, seeks to protect entities that are confined, housed, or protected. The fenced-in yard in this case sought to do exactly that. There is no inconsistency between the three elements Barksdale cites and those found in a fenced-in yard such as the one in the case at bar.
 {¶ 18} Barksdale can also be distinguished on its facts from the case at bar, and those differences further explain why the yard here qualifies as a "structure." In Barksdale what was protected was located in separate storage units. In the case at bar, however, the fence protected scrap metal that, in part, lay outside any building. In addition, the Wilkoff fence surrounded a business office that housed its employees and customers. The business office, combined with the scrap metal yard, comprised the entirety of the Wilkoff business, and the fence was constructed to protect this entirety. The elements of confinement and protection especially qualify the facts in this case as a "structure."[2]
 {¶ 19} Precedent for finding that a fenced-in yard constitutes a structure can also be found in the common law definition of "curtilage": "the land or yard adjoining a house, usually within an enclosure." Blacks Law Dictionary, (8 Ed.Rev. 2004) 411. Generally, the term "curtilage" usually applies to search and seizures analysis and answers the same question posed in the situation at bar — how far do the boundaries of a defined protected area extend? Under the concept of curtilage, the boundaries extend to the perimeter of the enclosed property. It is reasonable to view the curtilage of a business like the curtilage of a home, absent permanent residents.
 {¶ 20} In State v. Vondenhuevel, Logan County App. No. 8-04-15, 2004-Ohio-5348, the Third District described a "curtilage" as "the area to which extends the intimate activity associated with the `sanctity of a man's home and the privacies of life,'" Oliver v. United States (1984), 466 U.S. 170, 180,104 S.Ct. 1735, citing Boyd v. United States (1886),116 U.S. 616, 630, 6 S.Ct. 524, overruled on other grounds in Warden v.Hayden (1967), 387 U.S. 294, 87 S.Ct. 1642.
 {¶ 21} The Vondenhuevel court also cited United States v.Dunn (1987), 480 U.S. 294, 301, which crafted a four-prong test for determining whether an area constitutes a "curtilage":
* * * [W]e believe that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. We do not suggest that combining these factors produces a finely tuned formula that, when mechanically applied, yields a `correct' answer to all extent of curtilage questions. Rather, these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration — whether the area in question is so intimately tied to the home itself that it should be placed under the home's `umbrella' of Fourth Amendment protection.
Vondenhuevel, ¶ 11, citing United States v. Dunn (1987),480 U.S. 294, 301.
 {¶ 22} Applying Dunn's four-pronged test to the situation at bar, this court finds that the Wilkoff fenced-in yard is substantially similar to a curtilage. First, the area that Chambers entered and stole from is adjacent to the office. Second, the area is within the enclosure surrounding the business. Third, the nature of the area's use — storing scrap metal to be sold — is one primary function of the business. The fourth factor, "the steps taken by the resident to protect the area from observation by people passing by," refers to the extent to which the owners intended to shield their protected interest from being invaded. In addition to the presence of security personnel, the locks and height of the Wilkoff's fence evince that the owners went to a significant extent to shield their property from the same invasive act the statute defining breaking and entering seeks to prohibit: trespass on and theft of property.
 {¶ 23} Although the Dunn test is not a "finely tuned formula," it does help determine "whether the area in question is so intimately tied" to the protected area that it likewise deserves protection. The Wilkoff's fenced-in scrap yard meets this test. It is material to the main instrumentality of the Wilkoff's business, the storage and sale of scrap metal, and is thus "intimately tied" to the protected area. An analysis based on the four factors from the Dunn test, therefore, supports a finding that the Wilkoff's fenced-in area is similar to a "curtilage" and thus is a structure subject to a breaking and entering.
 {¶ 24} This interpretation is also supported by considering breaking and entering in the context of other related crimes, especially on a spectrum — with trespass at one end and burglary at the other. The Committee Comment to the breaking and entering statute, R.C. 2911.13, states that "this section in essence defines an `aggravated' species of trespass * * *." The defendant in the case at bar committed an aggravated form of trespass. He entered onto a property, by stealth and without permission, with the intent to commit a theft. To charge him with mere trespass would not adequately address his offense, and to charge him with the only similar offense available, burglary, would be inappropriate because the area was not occupied. Essentially, his offense was more than a trespass, but less than a burglary. Breaking and entering, an "aggravated species of trespass," is the appropriate charge for the actions at bar.
 {¶ 25} Many other states likewise have found that a fenced-in yard is a structure for purposes of their breaking and entering statutes. In State v. Roadhs (1967), 71 Wash.2d 705,430 P.2d 586, the Washington Supreme Court found that a fence used to enclose and protect property is an integral part of a closed compound and thus constituted a structure subject to breaking and entering. In analogous cases, the Oklahoma Supreme Court and the Indiana Supreme Court also found that a fence surrounding a lumber yard constituted a structure. See Stanley v. State
(1973), 512 P.2d 829; Joy v. State (1984), 460 N.E.2d 551, Ind. App. Lexis 2389. The Joy court reasoned that a fence, "like the fence in Roadhs, was clearly `for the purpose of protecting property within its confines and [was], in fact, an integral part of a closed compound." Id., citing Roadhs, supra at 708-09.
 {¶ 26} Applying all these considerations to the case at bar, this court finds that the Wilkoff's fenced-in yard, protecting the property and activities of a place of business, is an "unoccupied structure" for purposes of the breaking and entering statute, R.C. 2911.13. We acknowledge such a finding should be based on a case by case analysis, however, and limit this decision to its narrow facts. Accordingly, we overrule appellant's first assignment of error.
II. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 27} When an appellate court reviews the weight of the evidence presented at trial, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony." See Thompkins,78 Ohio St.3d 380, citing Tibbs v. Florida (1982) 457 U.S. 31, at 42. In a challenge to the manifest weight of the evidence, a court reviews the record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way * * *." Thompkins, supra at 387.
 {¶ 28} Chambers argues that even if the evidence were sufficient to convict him of the breaking and entering statute, "[t]he jury was incorrect in convicting appellant as there was no evidence that he ever entered into an `unoccupied' structure." Appellant's Brief p. 12. However, as our discussion above explains, the entity in which Chambers entered and took scrap metal, all without permission, did constitute a structure. The jury "did not lose its way" in finding that Chambers was one of the individuals who entered the scrap yard on July 15, 2005, and in finding that all the other elements of the crime of breaking and entering, R.C. 2911.13, were met.
 {¶ 29} After reviewing the entire record, weighing all the evidence and all reasonable inferences, and considering the credibility of the witnesses, we conclude that Chambers' conviction was not against the manifest weight of the evidence. Accordingly, we overrule his second assignment of error.
III. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO MORE THAN THE MINIMUM PRISON SENTENCE BECAUSE THE COURT DID NOT MAKE A FINDING THAT HE HAD PREVIOUSLY SERVED A PRISON TERM.
 {¶ 30} Chambers contends that the record does not reflect he ever served a prison term and thus the trial judge lacked a basis for imposing more than the minimum sentence under R.C.2929.14(B).
 {¶ 31} R.C. 2929.14 (B) reads as follows:
The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
(2) protect the public from future crime by the offender or others.
 {¶ 32} While this case was pending on appeal, the Ohio Supreme Court rendered its decision in State v. Foster (2006),109 Ohio St.3d 1. In Foster, the Court found that R.C.2929.14(B) violated the Sixth Amendment to the United States Constitution because the statute allowed judges to make factual determinations as the basis for increasing a criminal sentence. Although the statute previously required judges to make judicial fact-finding before imposing sentences harsher than the minimum prescribed by statute, post-Foster sentencing guidelines allow judges to use their discretion, without fact-finding of any kind, in sentencing. These sentences, however, must still fit within statutory guidelines. Moreover, the Foster opinion specified that if defendants were sentenced under Foster-altered statutes, and their appeal was pending, they were to be remanded for new sentencing consistent with that opinion.
 {¶ 33} Under post-Foster sentencing guidelines, therefore, Chambers' argument is moot. It is now immaterial whether the judge made a finding on the record indicating that Chambers had served a prison term. Now the judge has full discretion and does not have to make any judicial fact-finding in imposing a sentence within statutory limitations on a defendant.
 {¶ 34} Chambers further claims that he should be re-sentenced according to Ohio sentencing guidelines in effect at the time of his trial. He argues that revision of the sentencing guidelines by Foster amounts to an ex-post facto violation and thus contravenes Article I, Section 10 of the United States Constitution and Article II, Section 28 of the Ohio Constitution. He claims that Foster should not apply to his sentencing and therefore that the alleged absence of his prior conviction from the record precludes the trial judge from imposing more than the minimum sentence.
 {¶ 35} At this time, it is premature for this court to rule on whether Chambers' resentencing under a structure put into effect after his conviction amounts to an unconstitutional ex-post facto violation. This issue is not yet properly before us, because Chambers has not yet been sentenced under Foster.
See State v. McKercher (April 10, 2006), Allen County App. No. 1-05-83, 2006 Ohio App. Lexis 1653. Accordingly, the third assignment of error is not well taken.
Conviction affirmed and case remanded for resentencing.
Blackmon, J., concurs.
McMonagle, J., dissents, (See Attached Dissenting Opinion.)
[1] These definitions were also subsequently adopted.
[2] The definition of a "structure" in Webster's UnabridgedDictionary, Second Edition (1998) 1887, also provides guidance: "a mode of building, construction, or organization; arrangement of parts, elements, or constituents." The fence surrounding the scrap yard in the case at bar was a "mode of * * * organization" that was "arranged" to protect against trespass and theft of property — the interests that the statute defining the crime of breaking and entering seeks to protect.