The STATE of Ohio, Appellee,

v.

LEWIS, Appellant.

[Cite as *State v. Lewis,* 192 Ohio App.3d 153, 2011-Ohio-187.]

Court of Appeals of Ohio,
Fifth District, Ashland County.

No. 10–COA–023.

Decided Jan. 12, 2011.

**156**

Ramona Francesconi Rogers, Ashland County Prosecuting Attorney, and Andrew N. Bush, Assistant Prosecuting Attorney, for appellee.

Brent L. English, for appellant.

GWIN, Judge.

{¶ 1} Defendant-appellant, Wendy L. Lewis, appeals her conviction and sentence entered by the Ashland County Court of Common Pleas, Juvenile Division, on one count of child endangerment, a misdemeanor of the first degree, in violation of R.C. 2919.22(A). The plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} On February 10, 2010, Rosanna Miller, a shopper at the Ashland, Ohio Walmart, discovered a young child alone in a vehicle crying loudly. This child was later identified as appellant's two-year-old son, W.K. Out of concern for the child, Miller called the Ashland Police Department to report the situation. Before police arrived, appellant came out of the store, got the child out of the car, and returned to the store.

{¶ 3} Sergeant Darcy Baker of the Ashland City Police Department responded to the call. Before entering the store, Sergeant Baker looked inside appellant's car. He later described the condition of the inside of that car as "filthy," particularly that the vehicle contained more trash than he has seen in a vehicle in 18 years of police work. He noticed uneaten French fries all over the child's car seat and a half-eaten burrito sitting within reach of the car seat. However, Sergeant Baker did not photograph the interior of the car.

{¶ 4} Sergeant Baker then entered the store and located appellant. Appellant initially stated that she had left the child alone for only a few minutes. When Sergeant Baker informed appellant that Walmart has excellent surveillance

systems, she revised her estimate and admitted that she had left the child alone for about 20 minutes.

{¶ 5} Appellant told Sergeant Baker that she and her son left their home in the Nova, Ohio area at about 2:30 p.m. that day to go to Walmart and they arrived at about 3:00 p.m. because the roads were "not the best." They stopped at the GNC store in a strip mall adjacent to the Walmart store where she also left her son in the car for about five minutes. Appellant told the officer that she went to the Walmart store to get a birthday card or gift and that her son was asleep and she did not want to wake him. Appellant admitted repeatedly that she had made a bad decision that day by leaving her son alone.

{¶ 6} A Walmart surveillance videotape was introduced into evidence at appellant's jury trial. The video showed appellant entering the Walmart store at 2:59:36 p.m. The video shows her leaving the store 29 minutes and 42 seconds later at 3:29:16 p.m. The same video shows her reentering the store with her son at 3:31:40 p.m. A separate video shows Sergeant Baker arriving at 3:35:14 p.m.

{¶ 7} Sergeant Baker testified over objection about his experience investigating crime, and supervising officers that investigate crime, at the Ashland Walmart. These investigations included shoplifting incidents, purse snatchings, and reports of people breaking into cars. Over objection, he also testified that the Ashland police had arrested persons at the store on "felony warrants." Furthermore, and over objection, he testified that the Walmart parking lot was "absolutely not" a safe place to leave a child. On cross-examination, however, he admitted that in his 17 years on the Ashland police force, he had never investigated a child abduction at a Walmart or similar store in the city of Ashland, Ohio. Over objection, Sergeant Baker was permitted to testify that the "partially eaten burrito and the French fries in the car seat were within reach and could have been put in a child's mouth."

{¶ 8} Sergeant Baker testified that February 10, 2010, was a cold and snowy day. The state offered an exhibit, which was admitted by stipulation of the parties, that showed that the ambient temperature at 3:50 p.m. on February 10, 2010, at Mansfield Airport was 25 degrees. The wind speed at the time was 14 miles per hour.

{¶ 9} Amy Shenberger, an investigator for the Ashland County Department of Children and Family Services, testified about her qualifications in investigating instances of child neglect and discussed some of her concerns about the situation. The Ashland Police Department sent her a neglect complaint arising from the incident in question. She spoke with appellant at appellant's home sometime after the incident at the Walmart store. Appellant told Shenberger that she had used very poor judgment that day and she was "glad" nothing had happened to her son. Over objection, Shenberger was permitted to testify that the presence

of French fries and/or a half-eaten burrito or taco within reach of a child could be seen as a choking hazard if the child were to eat them. Over objection, she also testified that by leaving the child in the car unattended, it was possible that the child could sustain hypothermia and he could "undo himself from a car seat and get out of the car and get into traffic, and could be abducted."

{¶ 10} Appellant chose not to testify in this case. However, she called her mother, Judith Weatherman, to establish that appellant was 44 years old and that appellant's son was two years old. Weatherman identified the child car seat kept in the appellant's car. Weatherman also identified the child's coat.

{¶ 11} The jury found appellant guilty of child endangerment. The trial court deferred sentencing pending the completion of a presentence-investigation report. At a hearing held July 14, 2010, the trial court sentenced appellant to pay a fine and imposed community-control sanctions. The trial court stayed execution of the sentence pending appeal.

{¶ 12} Appellant has timely appealed, raising the following four assignments of error:

{¶ 13} "I. The trial court erred by denying appellant's motion for a judgment of acquittal.

{¶ 14} "II. The competent evidence in the record was not sufficient to sustain a conviction.

{¶ 15} "III. The judgment was against the manifest weight of the evidence.

{¶ 16} "IV. The trial court erred by admitting incompetent, irrelevant, and speculative evidence."

## ASSIGNMENT OF ERROR IV

{¶ 17} Appellant's fourth assignment of error concerns the admission of certain evidence at her jury trial. Because appellant's first, second, and third assignments of error each require us to review the evidence, we shall address appellant's fourth assignment of error first.

{¶ 18} In her fourth assignment of error, appellant argues that the trial court permitted the jury to hear irrelevant and speculative evidence offered by the state. Specifically, appellant contends that Sergeant Baker and Amy Shenberger were both permitted to speculate on possible risks to the child caused by appellant's decision to leave her son in his car seat for nearly 30 minutes while she was in the Walmart store. We disagree.

{¶ 19} In *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, the Supreme Court reaffirmed the long-standing test for appellate review of the admission of evidence:

{¶ 20} "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court. *E.g., State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. An appellate court [that] reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233, 1237. As this court has noted many times, the term "abuse of discretion" connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily, or unconscionably. *E.g., Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142."

{¶ 21} A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby. *State v. Maurer* (1984), 15 Ohio St.3d 239, 264, 15 OBR 379, 473 N.E.2d 768. The trial court must determine whether the probative value of the evidence or testimony is substantially outweighed by the danger of unfair prejudice or of confusing or misleading the jury. See *State v. Lyles* (1989), 42 Ohio St.3d 98, 537 N.E.2d 221.

{¶ 22} Evid.R. 701 provides, "If the witness is not testifying as an expert, [his] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of [his] testimony or the determination of a fact in issue."

{¶ 23} The distinction between lay- and expert-witness opinion testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning that only specialists in the field can master. *State v. McKee* (2001), 91 Ohio St.3d 292, 744 N.E.2d 737.

{¶ 24} Sergeant Baker and Amy Shenberger were not offered as expert witnesses by the state. Thus, each testified as a lay witness on the issue of the risks to the child caused by appellant's decision to leave her son in his car seat for nearly 30 minutes while she was in the Walmart store. Each testified based upon his or her own perceptions and personal and work-related experiences.

{¶ 25} Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 26} "Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. It is only the latter that

Evid.R. 403 prohibits." *State v. Wright* (1990), 48 Ohio St.3d 5, 8, 548 N.E.2d 923.

{¶ 27} Any claim of speculation concerning the risks associated with leaving a two-year-old child unattended in a car parked in a Walmart parking lot in subfreezing temperatures for nearly 30 minutes goes to the weight, not the admissibility, of the testimony. There was nothing unreasonable, arbitrary, or unconscionable about the trial court's handling of the lay-opinion testimony in this case.

{¶ 28} Appellant's fourth assignment of error is overruled.

### ASSIGNMENTS OF ERROR I, II, and III

{¶ 29} Because appellant's first, second, and third assignments of error each require us to review the evidence, we shall address the assignments collectively.

{¶ 30} In her first assignment of error, appellant alleges that the trial court erred in not granting her Crim.R. 29 motion for acquittal at the conclusion of the state's case. In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. See, e.g., *State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965; *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.

{¶ 31} In her second and third assignments of error, appellant maintains that her conviction is against the manifest weight of the evidence and against the sufficiency of the evidence.

{¶ 32} Our standard of reviewing a claim that a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 33} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine that asks whether the state has met its burden to produce evidence on each element of the crime charged sufficient for the matter to be submitted to the jury.

{¶ 34} Manifest-weight-of-the-evidence claims concern the amount of evidence offered in support of one side of the case, and it is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its

verdict results in a manifest miscarriage of justice, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. On review for manifest weight, a reviewing court examines " 'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " Id. at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 35} In *Thompkins,* the Ohio Supreme Court held that "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; *State v. Miller,* 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, at ¶ 38.

{¶ 36} Employing the above standard, we believe that the state presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that appellant committed the offense of endangering children.

{¶ 37} In the present case, appellant was charged with and convicted of child endangering in violation of R.C. 2919.22(A).

{¶ 38} R.C. 2919.22(A) provides:

{¶ 39} "(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."

{¶ 40} In *State v. Stewart,* 5th Dist. No. 2007–CA–00068, 2007-Ohio-6177, 2007 WL 4105597, ¶ 59, this court noted:

{¶ 41} "R.C. 2919.22(A) is aimed at preventing acts of omission or neglect when the breach results in a substantial risk to the health or safety of a child. See,

e.g., *State v. Sammons* (1979), 58 Ohio St.2d 460 [12 O.O.3d 384, 391 N.E.2d 713], appeal dismissed (1980), 444 U.S. 1008 [100 S.Ct. 655, 62 L.Ed.2d 637]; *State v. Kamel* (1984), 12 Ohio St.3d 306, 308 [12 OBR 378, 466 N.E.2d 860]; Committee comment to R.C. 2919.22."

{¶ 42} The parties do not dispute that appellant was the mother of W.K., a minor child. Thus, the evidence offers a substantial basis upon which the jury could reasonably conclude that the first element of R.C. 2919.22(A) was satisfied beyond a reasonable doubt.

{¶ 43} The jury could have found the next element of R.C. 2919.22(A) satisfied. As a parent, appellant clearly had a duty to care for and protect her son.

{¶ 44} Although not stated in R.C. 2919.22, recklessness is the culpable mental state for the crime of child endangering. *State v. O'Brien* (1987), 30 Ohio St.3d 122, 30 OBR 436, 508 N.E.2d 144; *State v. Conley,* Perry App. No. 03–CA–18, 2005-Ohio-3257, 2005 WL 1503589, at ¶ 20; *State v. Stewart,* 2007-Ohio-6177, 2007 WL 4105597, at ¶ 61. Recklessness is defined in R.C. 2901.22(C):

{¶ 45} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

{¶ 46} To satisfy the second element of a violation of R.C. 2919.22(A), recklessness must create a "substantial risk" to the health and safety of the child. A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result [or circumstance] may occur * * *." R.C. 2901.01(H). See also *Kamel,* 12 Ohio St.3d at 308, 12 OBR 378, 466 N.E.2d 860; *Stewart* at ¶ 63.

{¶ 47} The evidence in the case at bar indicated that what led to the discovery of the unattended child inside appellant's car was the loud cries of the two-year-old child. Rosanna Miller testified, "It was like constant screaming. * * * Loud enough for me to hear in back of my car." The store's surveillance video established that the child was alone in the car for nearly 30 minutes. It was a wintry day with temperatures between 24 and 25 degrees. The wind speed at the time was 14 miles per hour. Appellant admitted that she had left the child alone in the car previously on the same day when she went inside the GNC store. Appellant initially said she did not think this was a problem, because she had left her son unattended for just a few minutes. However, when confronted with the fact that the store had video surveillance cameras, appellant conceded that she

had made a bad decision and estimated she had been in the store for about 20 minutes while her son was in the car outside.

{¶ 48} Sergeant Baker testified that he had previously been dispatched to that store to investigate shoplifting incidents, purse snatchings, and reports of people breaking into cars. Sergeant Baker further testified that the "partially eaten burrito and the French fries in the car seat were within reach and could have been put in a child's mouth."

{¶ 49} An appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; see *Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d 492; *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. *Jackson* at 318–319. Rather, when "faced with a record of historical facts that supports conflicting inferences," a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326.

{¶ 50} Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. See *United States v. Nevils* (9th Cir.2010), 598 F.3d 1158. At this second step, however, a reviewing court may not "'ask itself whether *it* [emphasis sic] believes that the evidence at the trial established guilt beyond a reasonable doubt,'" id. at 318–319, quoting *Woodby v. Immigration & Naturalization Serv.* (1966), 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362, only whether "*any*" rational trier of fact could have made that finding, id. at 319. At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact-finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt. *Jackson; Nevils*.

{¶ 51} In the case at bar, viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant recklessly created a substantial risk to the health or safety of the two-year-old child by leaving that child unattended in a car

parked in a public parking lot in below-freezing weather conditions for nearly 30 minutes. We hold, therefore, that the state met its burden of production regarding the crime of child endangering. Accordingly, there was sufficient evidence to support appellant's convictions.

{¶ 52} "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard*, 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 11 S.Ct. 720, 724–725, 35 L.Ed. 371 (1891)." *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413.

{¶ 53} Although appellant cross-examined the witnesses and presented her own argument to support her claim that she did not recklessly leave her son in the car and that any risk of harm was speculative, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180.

{¶ 54} The jury was free to accept or reject any and all of the evidence offered by the parties and to assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP–739, 2000 WL 297252, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09–1236, 1996 WL 284714. Indeed, the jurors need not believe all of a witness's testimony, but may accept only portions of it as true. *State v. Raver*, Franklin App. No. 02AP–604, 2003-Ohio-958, 2003 WL 723225, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 26 O.O.2d 366, 197 N.E.2d 548; *State v. Burke*, Franklin App. No. 02AP–1238, 2003-Ohio-2889, 2003 WL 21291042, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 55} After reviewing the evidence, we cannot say that this is one of the exceptional cases in which the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crime charged in the indictment. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{¶ 56} We conclude that the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.

{¶ 57} Appellants first, second, and third assignments of error are overruled.

{¶ 58} For the foregoing reasons, the judgment of the Ashland County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

EDWARDS, P.J., concurs.

DELANEY, J., concurs separately.

DELANEY, Judge, concurring separately.

{¶ 59} I agree with the majority's disposition of appellant's assignments of error but disagree with the majority's statement that "[a]ny claim of speculation concerning the risks associated with leaving a two-year-old child unattended" goes to the weight, not the admissibility, of the testimony. Majority opinion at ¶ 27.

{¶ 60} I would find that the issues of relevancy and speculation raised by appellant concerning Sergeant Baker's and Amy Shenberger's lay-opinion testimony goes to admissibility, not weight. Evidence that is not relevant is not admissible, Evid.R. 402, and if not wholly speculative, the weight to be given to the evidence is a matter for the trier of fact to determine. *Reagans v. Mountainhigh Coach Works, Inc.*, 2nd Dist. No. 05CA12, 2006-Ohio-423, 2006 WL 242602, ¶ 47.

{¶ 61} Appellant adamantly contends that the testimony of Baker and Shenberger was rank speculation because the testimony was framed in terms of "possible" risks, as opposed to a "strong possibility" of risk of harm that may occur. However, each witness's lay-opinion testimony was based upon firsthand knowledge. Rational inferences were then taken from these facts (i.e., the Walmart parking lot was an unsafe location based upon known criminal activity, the bitterly cold weather exposed the toddler to hypothermia, the half-eaten food posed a choking hazard to the toddler). Individually and collectively, each of these factors could have been found to pose a substantial risk to the toddler.

{¶ 62} Therefore, I concur with my colleagues that the appellant's conviction is supported by the evidence.