[Cite as *State v. Russell*, 2013-Ohio-3079.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                                  :

    Plaintiff-Appellee,                        :               CASE NO.   CA2012-08-156

                                 :               O P I N I O N
  - vs -                                                                     7/15/2013

                                  :

CHAD ALLEN RUSSELL,                            :

    Defendant-Appellant.                      :


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2011-12-2104


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Neal D. Schuett, 121 West High Street, Oxford, Ohio 45056, for defendant-appellant


      **RINGLAND, P.J.**

      {¶ 1}   Defendant-appellant, Chad Allen Russell, appeals his conviction in the Butler County Common Pleas Court for breaking and entering and possessing criminal tools.  For the reasons that follow, we affirm Russell's convictions for those offenses.

      {¶ 2}   On December 14, 2011, at approximately 11:00 p.m., one of JP Transportation's drivers, Robert Jones, came to work and circled around behind the company's garage since the company had experienced previous break-ins.  When Jones

saw a pickup truck that did not appear to belong to any of his fellow employees, he called the Middletown Police Department.

{¶ 3} Middletown Police Officer Ryan Morgan and his partner, Officer Nelson, were dispatched to JP Transportation to investigate. The officers traveled to the scene in "black mode," i.e., with their overhead lights turned off so as not to alert any suspects. Upon arrival, the officers saw the parked truck, which was unoccupied, and noticed that, directly behind it, was a cut in the fence that surrounds JP Transportation, which led them to believe that someone may have entered the premises through the cut.

{¶ 4} After walking around for 15 to 20 minutes, the officers announced, "Middletown Police. If anyone's in here, come out." However, no one responded. The officers were soon joined by Officer Justin Camper and Officer Dennis Jordan, who brought his canine, Gunner. After waiting approximately 20 minutes to let the area "clear out" from the other officers' scent, Officer Jordan walked Gunner over to where the truck was parked. When Officer Jordan and Gunner were about 100 yards away from the cut in the fence, Gunner started showing signs that he was smelling a person. When they were about 80 yards away from the cut in the fence, Officer Jordan called out three times, "Police canine, come on out." When he called out the third time, Officer Jordan warned that the dog would bite anyone who refused to come out. When Gunner began "dragging" him, Officer Jordan unhooked the dog from his leash to allow it to go to whatever it smelled. Gunner ran past the truck toward the cut in the fence. Russell then came out through the cut in the fence. Gunner took down Russell, and the officers apprehended him.

{¶ 5} Officer Jordan noticed that there was mud on Russell's thighs, knees and belly, which made it appear that he had been crawling. Officer Jordan led Gunner through the property to search for any other suspect that might have been hiding there. Gunner pulled Officer Jordan into a thicket on the premises where he discovered a glove, a flashlight and

some tools. Officer Jordan also saw that there was "fresh mud" on the steps and inside the door of an office trailer on the premises of JP Transportation.

{¶ 6} Russell was indicted for breaking and entering in violation of R.C. 2911.13(A) and possessing criminal tools in violation of R.C. 2923.24, with both charges being fifth-degree felonies. Following a jury trial, he was convicted of breaking and entering and the lesser included offense of first-degree misdemeanor possessing criminal tools. He was sentenced to 11 months in prison for breaking and entering and 180 days for misdemeanor possessing criminal tools, and was ordered to serve both sentences concurrently.

{¶ 7} Russell now appeals, assigning the following as error:

{¶ 8} Assignment of Error No. 1:

{¶ 9} APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY ALLOWING THE STATE'S WITNESS TO PROFFER AN IMPROPER OPINION.

{¶ 12} Assignment of Error No. 3:

{¶ 13} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT IMPROPERLY INSTRUCTED THE JURY.

{¶ 14} Assignment of Error No. 4:

{¶ 15} APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 16} Assignment of Error No. 5:

{¶ 17} THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF BREAKING AND ENTERING, IN VIOLATON OF R.C. §2911.13(A).

{¶ 18} Assignment of Error No. 6:

{¶ 19} APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 20} We shall address Russell's assignments of error in an order that will facilitate our analysis of the issues raised therein.

{¶ 21} In his third assignment of error, Russell argues the trial court erred when it instructed the jury that the "unoccupied structure in this matter is defined as the fenced-in yard protecting the property and activities of a place of business." We disagree with this argument.

{¶ 22} Russell was indicted for, and convicted of, breaking and entering in violation of R.C. 2911.13(A), which provides that "[n]o person by force, stealth, or deception shall trespass in an unoccupied structure with purpose to commit therein any theft offense as defined in section 2913.01 of the Revised Code or any felony."

{¶ 23} R.C. 2909.01(C) defines an "occupied structure" as meaning

any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

(1)  It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

(2)  At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

(3)  At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

(4)  At the time, any person is present or likely to be present in it.

{¶ 24} The Ohio Revised Code does not define the term "unoccupied structure," but in *State v. Carroll*, 62 Ohio St.2d 313, 314-315 (1980), the court stated that an unoccupied

- 4 -

structure would include any structure not classified as an occupied structure.

{¶ 25} In *State v. Barksdale*, 11th Dist. Lake No. 12-117 (Dec. 31, 1987), 1987 WL 32733, *2-3, the Eleventh District Court of Appeals concluded that a fenced-in yard was not an "unoccupied structure" for purposes of the breaking and entering statute. In support of its determination, the Eleventh District noted that "the closest definition of what constitutes a structure is that of ' * * * any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or any portion thereof * * *,' which is contained in R.C. 2909.01" and that the "specific enumerations contained in the statute evidence an inherent element of confinement, housing, or protection not found in a fenced in yard." *Id.* at *2.

{¶ 26} The Eleventh District reasoned that, since "the enumerations contained in R.C. 2909.01 are limited to buildings, erections, or vehicles evidencing some form of confinement generally for housing, quasi housing, or safety purposes[,]" "the very openness of a fenced in yard acts to exclude it from those items contained in R.C. 2909.01." *Id.* Consequently, the Eleventh District concluded that "a fenced in field does not constitute an unoccupied structure within the purview of R.C. 2909.01." *Id.*

{¶ 27} In *State v. Chambers*, 8th Dist. Cuyahoga No. 87221, 2006-Ohio-4889, ¶ 15, the Eighth District Court of Appeals refused to follow *Barksdale*, noting that when the General Assembly included the phrase "or other structure" in R.C. 2909.01(C), the legislature "evinced a strong intent *not* to make the list of enumerated examples exclusive." The Eighth District further noted that "[t]his broad phrase clearly implies that entities not listed in R.C. 2909.01(C) could also be deemed 'structures' for purposes of relevant statutes. In other words, the list is illustrative, not exclusive." *Id.*

{¶ 28} The Eighth District also stated:

> The language of [R.C. 2909.01(C)] furnishes no express criterion that would restrict a phrase as general as "or other structure." The

> *Barksdale* court, however, found that " * * * each of the specific enumerations contained in the statute evidence an inherent element of confinement, housing, or protection not found in a fenced in yard." *Barksdale,* supra at 2. We agree that the statutory examples imply these elements. We do not agree, however, that these elements cannot be found in a fenced-in and locked yard in which scrap has been located and is part of a business. On the contrary, such a fenced-in yard may evidence an inherent element of confinement, housing, or protection. The crime of breaking and entering, just like the crime of burglary, seeks to protect entities that are confined, housed, or protected. The fenced-in yard in this case sought to do exactly that. There is no inconsistency between the three elements *Barksdale* cites and those found in a fenced-in yard such as the one in the case at bar.

*Chambers* at ¶ 17.

{¶ 29} Russell asserts that *Chambers* is inapplicable to this case since, here, there was a large hole in the fence, and therefore the fence in this case did not provide the kind of protection that was provided by the "fenced-in and locked yard" at issue in *Chambers.* In support of his argument, he points to the testimony of Officer Jordan, who testified that, even though he was six feet in height and weighed 220 pounds, the hole in the fence was big enough to allow him "to crawl through [it] very easily," and that the hole had been in the fence for as many as 13 years. Russell contends that the hole in the fence surrounding JP Transportation placed the fence in such a state of disrepair that it could not qualify as an unoccupied structure, for purposes of R.C. 2911.13(A). We find this argument unpersuasive.

{¶ 30} While the fence may not have been sufficient to keep everyone out of the premises, it nevertheless provided some degree of protection for the buildings and equipment that are kept on the premises. Therefore, we conclude that the fenced-in premises at JP Transportation constituted an "unoccupied structure" for purposes of the breaking and entering statute in R.C. 2911.13(A), and therefore the trial court did not abuse its discretion in instructing the jury as it did.

{¶ 31} Consequently, Russell's third assignment of error is overruled.

{¶ 32} In his second assignment of error, Russell asserts that the trial court erred in

admitting Officer Camper's opinion testimony regarding pipe cutting since it did not meet the requirements for either expert opinion testimony under Evid.R. 702 or lay opinion testimony under Evid.R. 701.

{¶ 33} The police recovered an exhaust pipe and tips from behind the driver's seat of Russell's truck, which were admitted into evidence at Russell's trial. When the state asked Officer Camper if he had "ever worked with exhaust tips and pipes and that kind of stuff[,]" Officer Camper testified that, before he became a police officer, he was employed for two years in the shipping and receiving department of TJ Dyer, a company that employed pipe fitters and plumbers. When the state asked him why he believed the exhaust pipe found in Russell's pick-up truck had been "freshly cut," Officer Camper testified that "[t]he cut on the tip of this [i.e., the exhaust pipe] had perforated the edges, and it was shiny which indicated that the cut was fresh" and "[t]here was no rust on it." When the state asked Officer Camper where the exhaust pipe normally would be cut to put a new tip on it, Russell's defense counsel raised an objection, which the trial court overruled. Officer Camper then testified, "[i]n my opinion, if you're going to cut the exhaust [pipe] to change the tip, to reweld [*sic*] it, you're going to do it on the original joint[.]" Officer Camper then explained where the original joint on the exhaust pipe was located, which was right at the spot of a "rust ring" on the exhaust pipe.

{¶ 34} The state asserts that Officer Camper's testimony was not admitted as expert opinion testimony under Evid.R. 702, but as lay opinion testimony under Evid.R. 701. The state contends that Officer Camper's testimony that the cut on the exhaust pipe was "fresh" since "[t]he cut on the tip of [the exhaust pipe] had perforated the edges, and it was shiny" and "[t]here was no rust on it," was admissible as lay opinion testimony under Evid.R. 701, because it was rationally based on his perception and was helpful to the jury.

{¶ 35} We agree that Officer Camper's testimony that the exhaust pipe had been

"freshly cut" since the cut had perforated the edges of the exhaust pipe and that the portion of the exhaust pipe where the cut was made was "shiny" and there was no rust, was admissible as lay opinion testimony, under Evid.R. 701, since it was rationally based on Officer Camper's perception and was helpful to the jury. However, the question of whether Officer Camper's testimony regarding where an exhaust pipe normally would be cut in order to put a new exhaust tip on it was admissible as lay opinion or expert testimony under Evid.R. 701 is more problematic.

{¶ 36} As discussed in *State v. Lewis*, 192 Ohio App. 3d 153, 2011-Ohio-187, ¶ 23 (5th Dist.), a distinction exists between lay person opinion testimony and expert opinion testimony, in that lay person opinion testimony "results from a process of reasoning familiar in everyday life, while expert opinion testimony results from a process of reasoning that only specialists in the field can master."

{¶ 37} The state acknowledges that the record fails to show that Officer Camper was qualified under Evid.R. 702 to give expert testimony on this subject matter. However, even if the trial court erred in admitting, as lay person opinion testimony under Evid.R. 701, Officer Camper's testimony regarding where an exhaust pipe normally would be cut in order to put a new exhaust tip on it, the error was harmless given the overwhelming nature of the state's other evidence against Russell that established his guilt on the charges of which he was convicted.

{¶ 38} The state was not required to show that Russell actually stole something at JP Transportation in order to convict him of the charge of breaking and entering under R.C. 2911.13(A), but instead, was merely required to show that Russell trespassed on an unoccupied structure with the purpose of committing a theft offense, as defined in R.C. 2913.01, or any felony. R.C. 2911.13(A). *See also State v. Brozich*, 108 Ohio St.3d 559, 561 (1923) ("The only element of larceny necessary to a charge of burglary is an intent to

steal, not the actual stealing").

{¶ 39} Here, Russell's purpose or intent to commit a theft offense easily could be inferred from his presence on JP Transportation's premises at 11:00 p.m., at which time he was found with a number of criminal tools in his possession. The defense attempted to prove that the reason Russell was on the premises of JP Transportation at 11:00 p.m. that night was to look for his family's dogs. However, none of the officers who were at the premises for approximately one-half hour prior to Russell's arrest heard anyone calling for a dog. Moreover, even though the officers were calling for anyone present on the premises to show themselves during that one-half hour, Russell, who ostensibly was on the premises for an innocent reason, made no attempt to respond to them until Officer Jordan issued his warning that his police dog would bite anyone who refused to come out.

{¶ 40} In light of the foregoing, Russell's second assignment of error is overruled.

{¶ 41} In his first assignment of error, Russell argues he was denied a fair trial because the prosecutor engaged in misconduct by expressing his personal belief that the exhaust pipe and tips found in his truck had been stolen by him. Russell contends that the prosecutor's statements (1) "bolstered" Officer Camper's "improper opinion testimony," indicating the exhaust pipe and tips found in the backseat of his truck were stolen by him, and (2) "directly attacked" the credibility of two of his witnesses, namely, his best friend, Dennis Spaniel, who testified that he had given the exhaust pipe and tips to Russell, and Spaniel's fiancée, Samantha Bolin, who testified that she bought those items from Craig's List.

{¶ 42} During the state's rebuttal argument, the prosecutor stated that it was his personal belief that the exhaust pipe and tips were stolen. He made this statement in the context of telling the jurors that they did not have to believe that Russell stole the exhaust pipe and tips, in order for them to find him guilty of the charges that had been brought against

him, and that the jurors could find Russell guilty if they simply believed that he went onto the premises of JP Transportation "to steal anything."

**{¶ 43}** The prosecutor erred by expressing his personal belief that the exhaust pipe and tips were stolen.[1] As this court stated in *State v. Gilbert*, 12th Dist. Butler No. CA2010-09-240, 2011-Ohio-4340, ¶ 46, "[a] prosecutor may comment upon the testimony and suggest the conclusions to be drawn from it, but a prosecutor cannot express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused, or go beyond the evidence which is before the jury when arguing for a conviction." However, Russell failed to object at trial to the prosecutor's statements. Therefore, in order for the prosecutor's statements to constitute reversible error, they must constitute plain error.

**{¶ 44}** An alleged error constitutes plain error only if the error is "obvious" and only if it can be said that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 108, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. "Notice of plain error 'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Lang*, quoting *Long*, paragraph three of the syllabus.

**{¶ 45}** The prosecutor's error in stating his personal belief that the exhaust pipe and tips were stolen did not rise to the level of plain error in light of the overwhelming evidence of Russell's guilt. Also, the trial court issued a cautionary instruction to the jurors, informing them that it was their responsibility to "decide all disputed questions of fact[,]" and reminding them "that statements of attorneys are not evidence."

**{¶ 46}** Nevertheless, we would remind the state that a prosecutor cannot express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused.

---

1. The better practice would be to use "I submit that the evidence shows that the exhaust pipe and tips were stolen."

*Gilbert*, 2011-Ohio-4340 at ¶ 46. Expressions of personal opinion by a prosecutor are "'a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued.'" *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 21, quoting *State v. Rahman*, 23 Ohio St.3d 146, 154, fn. 8 (1986).

{¶ 47} Consequently, Russell's first assignment of error is overruled.

{¶ 48} In his fourth assignment of error, Russell argues his federal and state constitutional rights to due process and a fair trial were violated because he received ineffective assistance of counsel. We find this argument unpersuasive.

{¶ 49} To prevail on an ineffective-assistance-of-counsel claim, a defendant must show that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) he was prejudiced by that deficient performance in that there is a reasonable probability that, but for his counsel's deficient performance, the outcome of his trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-694, 104 S.Ct. 2052 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

{¶ 50} Russell argues his trial counsel provided him with ineffective assistance by failing to have Bolin identify several e-mails, which led to their being excluded from evidence. Russell asserts that the e-mails would have provided "crucial evidence" in support of the defense's theory that he was not in possession of stolen property on the night in question since the e-mails could have proved that the exhaust tips found in his vehicle were legally purchased. However, the e-mails that were excluded were merely cumulative to Bolin's and Spaniel's testimony. Further, as we have stated earlier, it was not necessary for the state to prove that Russell actually stole the exhaust pipe and tips in order for the state to obtain a conviction on the offenses with which he was charged.

{¶ 51} Russell also argues his trial counsel provided him with ineffective assistance by failing to object to Officer Camper's opinion testimony regarding the perforations on the exhaust pipe and that the exhaust pipe was "freshly cut." However, as explained earlier, Officer Camper's testimony that the exhaust pipe was "freshly" cut because the cut on the exhaust pipe "had perforated the edges, and it was shiny" was admissible as lay opinion testimony under Evid.R. 701, because it was rationally based on his perception and was helpful to the jury.

{¶ 52} Finally, Russell argues his defense counsel provided him with ineffective assistance by failing to object to the prosecutor's statements that it was his personal belief that the exhaust pipe and tips were stolen. However, *Strickland* provides that a reviewing court must afford broad deference to a defense counsel's strategic and tactical trial decisions. *Id.* at 689-691, Here, defense counsel's decision not to object to the prosecutor's statements could be viewed as an objectively reasonable trial tactic on his part, and even if it could not, it cannot be said that Russell was prejudiced by this alleged performance error to the extent necessary under *Strickland* to establish an ineffective assistance claim.

{¶ 53} As a result, Russell's fourth assignment of error is overruled.

{¶ 54} In his fifth and sixth assignments of error, Russell contends his convictions were contrary to the sufficiency and weight of the evidence. These arguments lack merit. There was ample evidence presented on each of the elements of breaking and entering and the first-degree misdemeanor offense of possessing criminal tools to allow a reasonable juror to convict him of those offenses, and there is no evidence that the jury lost its way in deciding the evidentiary conflicts in this case.

{¶ 55} Accordingly, Russell's fifth and sixth assignments of error are overruled.

{¶ 56} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.